289 N.J. Super. 611 (1996)
674 A.2d 643
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAKE WILLIAMS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 26, 1996.
Decided April 23, 1996.
*613 Before Judges BAIME, VILLANUEVA, and KIMMELMAN.
Susan L. Reisner, Public Defender, attorney for appellant (Lon Taylor, Assistant Deputy Public Defender, of counsel and on the letter-brief).
Deborah T. Poritz, Attorney General, attorney for respondent (Marcy H. Geraci, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
Defendant was charged with two counts of first degree "carjacking" (N.J.S.A. 2C:15-2a(1)), third degree possession of a handgun without a permit (N.J.S.A. 2C:39-5b), two counts of second degree possession of a firearm for an unlawful purpose (N.J.S.A. 2C:39-4a), and third degree theft by receiving stolen property (N.J.S.A. 2C:20-7). A jury found defendant guilty of one count of carjacking, the lesser-included offense of third degree theft (N.J.S.A. 2C:20-3) on the other carjacking count, and theft by receiving stolen property. Defendant was acquitted of the remaining charges. The trial court merged the convictions and sentenced defendant to a custodial term of ten years with a five year parole disqualifier on the carjacking count.
On appeal, defendant argues (1) his motion for a judgment of acquittal was improperly denied, (2) the trial court committed plain error in its instructions on carjacking, and (3) the sentence imposed was "cruel and unusual." For the reasons that follow, we affirm defendant's convictions and sentence.
On September 25, 1993, Jason Sinclair and William Wagner borrowed an automobile belonging to Sinclair's mother and drove to Newark to purchase cocaine. After buying the drugs, the two men drove away by a circuitous route in order to escape police detection. According to the State's evidence, at a stop sign defendant approached the passenger side of the automobile and *614 put a gun to Wagner's head. Both Wagner and Sinclair were ordered to exit the vehicle. After relieving Wagner of some money and the cocaine he had just purchased, defendant ordered Sinclair to give him the keys to the car or he would shoot him. Ultimately, defendant obtained the keys and drove away. Defendant and Louise Jarrel, who was indicted only on the theft by receiving stolen property count, were arrested while seated in the stolen automobile several days later. Following the arrest, both Sinclair and Wagner positively identified defendant's photograph as that of their assailant. Shortly before trial, defendant telephoned Wagner and unsuccessfully attempted to stop him from testifying.
Defendant's version of the incident was markedly different. According to defendant, he assisted Sinclair and Wagner in purchasing drugs. When Wagner and Sinclair refused to give him his fair share of the drugs, defendant retaliated by locking them out of the car. More specifically, defendant testified that while he, Wagner and Sinclair stood beside the automobile, he pushed Wagner aside, jumped into the driver's seat, locked the passenger door and drove away. Defendant admitted that he kept the car for four days and changed the license plates.

I.
We reject defendant's contention that the trial court erred by denying his motion for a judgment of acquittal respecting the count charging carjacking from Wagner. The applicable statute provides in relevant part:
A person is guilty of carjacking if in the course of committing an unlawful taking of a motor vehicle . .. or in an attempt to commit an unlawful taking of a motor vehicle he:
(1) inflicts bodily injury or uses force upon an occupant or person in possession or control of a motor vehicle....
An act shall be deemed to be "in the course of committing an unlawful taking of a motor vehicle" if it occurs during an attempt to commit the unlawful taking of a motor vehicle or during an immediate flight after the attempt or commission.
[N.J.S.A. 2C:15-2a.]
The indictment charged defendant with two counts of carjacking. One count charged defendant with carjacking from Sinclair, *615 and the other charged him with carjacking from Wagner. The jury acquitted defendant of the count alleging a carjacking from Sinclair but convicted him of the lesser-included offense of third degree theft. The jury found defendant guilty of the count charging a carjacking from Wagner. Citing the split verdict, defendant asserts that the jury clearly disbelieved the State's version of the carjacking incident but rather found his own testimony to be credible. He thus contends that (1) because Wagner had already exited the vehicle and was standing outside of it when he was shoved aside, he was not an "occupant" of the vehicle when the unlawful taking occurred, and (2) the pushing of Wagner did not constitute the use of "force."
Initially, we observe that defendant's argument disregards the applicable standard for deciding a motion for a judgment of acquittal at the conclusion of the State's case. The test for determination of such an application is whether a jury could reasonably find the defendant guilty, viewing the State's evidence in its entirety, and giving the prosecution the benefit of all its favorable testimony and the legitimate inferences which can reasonably be drawn from the proofs. See State v. Reyes, 50 N.J. 454, 458-59, 236 A.2d 385 (1967); R. 3:18-1. At the time the trial court ruled on defendant's motion, the jury had not yet returned its verdict, and it would have been error had the State's version of the crime not been considered. Even if defendant had renewed his motion for a judgment of acquittal after the jury's verdict, however, the same standard would be applicable. See State v. Kluber, 130 N.J. Super. 336, 341-42, 327 A.2d 232 (App.Div. 1974), certif. denied, 67 N.J. 72, 335 A.2d 25 (1975); R. 3:18-2. It would have been grossly improper for the trial court to have ignored the evidence favorable to the prosecution.
Although not critical to our disposition of this issue, we add for the sake of completeness that the jury's acquittal of defendant with respect to the count charging carjacking from Sinclair does not necessarily mean that the factfinders rejected all of the State's evidence. But even if the verdict can be viewed as internally *616 conflicting, we have long upheld inconsistent verdicts. See United States v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461, 470 (1984); State v. Petties, 139 N.J. 310, 319, 654 A.2d 979 (1995); State v. Kamienski, 254 N.J. Super. 75, 95, 603 A.2d 78 (App.Div.), certif. denied, 130 N.J. 18, 611 A.2d 656 (1992); State v. Still, 112 N.J. Super. 368, 373, 271 A.2d 444 (App.Div. 1970), certif. denied, 57 N.J. 600, 274 A.2d 53 (1971). The United States Supreme Court has said that "[c]onsistency in the verdict is not necessary," that "[e]ach count ... is regarded as if it was a separate indictment," and that "acquittal on one [count cannot] be pleaded as res judicata of the other." Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 358-59 (1932). Thus, even were we to view the evidence and verdict from the vantage point of twenty-twenty hindsight, the result would not be different; the denial of defendant's motion for a judgment of acquittal would be sustained.
Beyond this, defendant's own testimony, even if believed in full, would not lead irresistably to an acquittal of the count charging carjacking from Wagner. We do not construe N.J.S.A. 2C:15-2 as requiring that the defendant use force against an "occupant" of an automobile only when the victim is within the actual structure of the vehicle. The broad aim of the statute is to enhance the punishment applicable to persons who use force or intimidation "to gain possession of [a] motor vehicle." Cannel, New Jersey Criminal Code Annotated, comment on N.J.S.A. 2C:15-2 (1995). We interpret the statutory language consonant with this objective.
Under the statute, the use of force or the threat of force is deemed to be "`in the course of committing an unlawful taking of a motor vehicle' if it occurs during an attempt to commit the unlawful taking ... or during an immediate flight after the attempt or commission." N.J.S.A. 2C:15-2. Whether the occupant or person in possession or control over the automobile is actually situated within the structure of the vehicle when force is employed or threatened is irrelevant under this statutory language.
*617 We add that defendant's strained reading of the law would yield anomalous results. It would mean that a criminal who places a gun to the head of an unsuspecting victim who is loading groceries into his or her car would not fall within the reach of the statute. We need not describe a litany of similar factual scenarios to illustrate the absurdity of defendant's argument. Suffice it to say, Wagner was no less an "occupant" of the automobile merely because he temporarily stepped out of the car.
We are also unpersuaded by defendant's claim that his pushing Wagner did not constitute the use of force. We need not resort to the science of physics to determine whether the force used was sufficient to elevate the crime from theft to carjacking. Cf. State v. Sein, 124 N.J. 209, 217-18, 590 A.2d 665 (1991). Suffice it to say that defendant's use of force was necessary to "`wrest [control of] the object of [the] theft from the victim.'" Id. at 216, 590 A.2d 665 (quoting Statement of the Senate Judiciary Committee to Senate Bill 885, (Apr. 21, 1980)).

II.
Defendant's remaining contentions clearly lack merit. R. 2:11-3(e)(2). Defendant's attack upon the trial court's instructions does not require extended discussion. We merely note that defendant did not interpose an objection to the charge at trial, and, in any event, the charge fairly and accurately conveyed the appropriate legal principles.
We thus turn to defendant's claim that the sentence required by N.J.S.A. 2C:15-2 constitutes cruel and unusual punishment. Carjacking is a first degree crime, but it is nonetheless punishable by a term of imprisonment between ten and thirty years. N.J.S.A. 2C:15-2b. The statute also requires imposition of at least a five year parole disqualifier. Ibid. We are entirely satisfied that the punishment imposed by the statute conforms with contemporary standards of decency and is neither grossly disproportionate to the offense nor substantially unrelated to an *618 appropriate penological objective. See State v. Maldonado, 137 N.J. 536, 556-57, 645 A.2d 1165 (1994); State v. Ramseur, 106 N.J. 123, 169, 524 A.2d 188 (1987); State v. Des Marets, 92 N.J. 62, 82, 455 A.2d 1074 (1983). In reaching this conclusion, we afford substantial deference to the authority of the Legislature to determine the types and limits of punishments for crimes. Solem v. Helm, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637, 649 (1983); Coker v. Georgia, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982, 989 (1977). See also Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (plurality opinion of Scalia, J.). We do not view the crime committed here as an isolated event unassociated with a pressing public problem. Carjacking is a calculated crime, and the Legislature could reasonably have concluded that the needs of society dictate that the punishment more nearly fit the offense than the offender. The Legislature clearly gave priority to punishment as a deterrent to others and as an aid to law enforcement. We find no illegality in the sentence imposed.
Affirmed.