712 A.2d 1226 (1998)
313 N.J. Super. 348
STATE of New Jersey, Plaintiff-Respondent,
v.
Dennis A. GARRETSON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1998.
Decided June 26, 1998.
*1227 Daniel V. Gautieri, Assistant Deputy Public Defender, for defendant-appellant (Ivelisse Torres, Public Defender, attorney; Mr. Gautieri, of counsel and on the brief).
*1228 Daniel J. O'Connor, Assistant Prosecutor, for plaintiff-respondent (Wayne J. Forrest, Somerset County Prosecutor, attorney; Mr. O'Connor, of counsel and on the brief).
Before Judges PETRELLA, SKILLMAN and STEINBERG.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
A jury found defendant Dennis A. Garretson guilty of carjacking by the unlawful taking of a motor vehicle while putting the occupant in fear of immediate bodily injury. N.J.S.A. 2C:15-2a(2). The jury did not accept the alternate theory of carjacking by operating the vehicle with the occupant remaining in it. N.J.S.A. 2C:15-2a(4). The non-jury trial offenses of criminal mischief and reckless driving were disposed of by the trial judge by findings of guilty on each charge. A charge of driving while his license was suspended was dismissed on the State's motion during trial. After the trial judge granted the State's motion, he sentenced Garretson as a repetitive offender to an extended prison term of fifty years in prison, ten years without parole eligibility. In addition, the judge imposed a $750 penalty and a driver's license suspension of two years[1] and noted same in the judgment of conviction for the carjacking offense.
On appeal, Garretson argues:
I. The court improperly refused to charge second degree robbery and theft from the person as lesser offenses of carjacking, mistakenly believing that lesser charges could not contain an element (theft) which was not required by the greater offense.
II. Because Mr. Garretson never threatened to use force against the occupant of the vehicle, the court abused its discretion in imposing an extended sentence.
III. The $750 penalty and two year driver's license suspension imposed under N.J.S.A. 2C:20-2.1a(2) must be vacated because the defendant was not convicted of motor vehicle theft or unlawful taking under Chapter 20.
The incident occurred at about 2:00 p.m. on July 29, 1995, in the parking lot of a convenience store in North Plainfield. A seventy-nine year old woman (the victim) was seated alone in the front passenger seat of her daughter's automobile while the daughter went to make a purchase. The victim testified that it was a hot day, but the windows were up, so that the air conditioner would keep the car cool. The motor was left running and the doors were unlocked.
While waiting for her daughter, the victim observed a man, later identified as Garretson, knock on the driver's side window and ask if she had change for a dollar. The victim said, and indicated, no. Garretson then opened the driver's side door, got into the driver's seat and put his hands on the wheel. The gearshift and the ignition key were both located on the right side of the steering column. The victim testified that Garretson moved his hand to the right side of the steering column to either put the car in gear or put his hand on the key. Garretson did not display any weapon or say anything further. Although the victim testified that Garretson did not touch her, a witness who was present in the parking lot testified that he observed the victim and Garretson engaged in some sort of shoving or pushing match while seated in the front seat.
The victim was afraid that Garretson was going to drive away so she told him she would not go with him and exited the vehicle. As she tried to get out of the car she fell to the ground, broke her hearing aid and sustained bruises on her back and shoulder.
A witness who was in the parking area assisted the victim to get up as she yelled that someone was stealing her car. The witness ran alongside the vehicle yelling for other cars not to let it through. He then got into his own car and drove to the police station.
*1229 Another driver in the area observed what had happened, called the police on his car phone and followed the vehicle being driven by Garretson. He observed it make a U-turn on a front lawn and heard a loud thud when the front left tire blew out. He then followed the vehicle to Seventh Street where the Plainfield police blocked its path and arrested Garretson. The police brought the victim to Seventh Street where she identified Garretson as the man who stole her daughter's vehicle.
At trial, Garretson did not dispute the facts presented on the State's case, but merely argued that those facts did not establish carjacking.

I.
The main thrust of Garretson's argument on appeal relates to the refusal of the trial judge to charge, as requested, second degree robbery and theft from the person as lesser included offenses of carjacking. N.J.S.A. 2C:1-8(e) prescribes that a trial court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense. The statute has been characterized and construed as requiring not only a rational basis in the evidence for a jury to convict the defendant of the included offense, but also requiring a rational basis in the evidence for a jury to acquit the defendant of the charged offense before the court may instruct the jury on the uncharged offense. State v. Brent, 137 N.J. 107, 114, 644 A.2d 583 (1994); State v. Saulnier, 63 N.J. 199, 306 A.2d 67 (1973); State v. Hollander, 201 N.J.Super. 453, 473, 493 A.2d 563 (App.Div.), certif. denied, 101 N.J. 335, 501 A.2d 983 (1985). See also Final Report of the New Jersey Criminal Law Revision Commission, § 2C:1-7(renumbered when enacted as 2C:1-8), commentary at p. 26 (1971) and State v. Sloane, 111 N.J. 293, 299, 544 A.2d 826 (1988). In other words, for a trial court to charge a jury on an unindicted offense, the court must conclude not only that the offense is included in the charged offense, but also that the evidence at trial presents a rational basis for the jury to acquit the defendant of the greater offense and convict him or her of the lesser. State v. Brent, supra, 137 N.J. at 123, 644 A.2d 583. To be considered a lesser-included offense, it must be shown that the evidence can be "established by proof of the same or less than all the facts required to establish the commission of the offense charged ..." N.J.S.A. 2C:1-8d(1).
Determining what is a lesser included offense has been an issue confronting our courts with some frequency in recent years. See State v. Brent, supra (137 N.J. at 117, 644 A.2d 583); State v. Sloane, supra (111 N.J. at 302, 544 A.2d 826); State v. Scherzer, 301 N.J.Super. 363, 480-481, 694 A.2d 196 (App.Div.), certif. denied, 151 N.J. 466, 700 A.2d 878 (1997); State v. Battle, 256 N.J.Super. 268, 606 A.2d 1119 (App.Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1992). The State in this case relies on State v. Matarama, 306 N.J.Super. 6, 21, 703 A.2d 278 (App.Div.1997), certif. denied, 153 N.J. 50, 707 A.2d 154 (1998), where we held that there was no error in failing to charge robbery, assault and theft from the person as lesser included offenses of carjacking. In that case there had been no request to charge a lesser included offense and no objection to the charge on that basis. The appeal was thus decided under the plain error standard, although we went on to find no error in the charge as given. In one sense, the Matarama case is distinguishable because there was no request for a lesser included offense charge. However, we rejected defendant's contention that the failure to charge the requested offenses constituted plain error and concluded that the charge as given was appropriate and correct. Ibid.
We recognize, of course, that errors in the charge to the jury on material issues are viewed as "poor candidates for rehabilitation under the harmless error philosophy," State v. Vick, 117 N.J. 288, 289, 566 A.2d 531 (1989), and are presumed to be reversible error. State v. Collier, 90 N.J. 117, 122-123, 447 A.2d 168 (1982); State v. Haley, 295 N.J.Super. 471, 476, 685 A.2d 494 (App.Div.1996). However, Matarama's language is broad enough to apply to other carjacking cases where a lesser included offense jury instruction is requested or an *1230 objection to a charge on the basis of failure to so charge is made for the first time after the jury was instructed.
An analysis of the carjacking statute indicates that it essentially covers offenses which could be categorized as robbery and theft from the person, albeit where a motor vehicle is involved. A comparison of those statutes evinces a statutory parallel in their language. The carjacking statute creates a new kind of robbery that is punishable more severely than robbery under N.J.S.A. 2C:15-1, with the specified added element in the carjacking statute of the taking of a motor vehicle under the circumstances specified in the statute. The "carjacking" statute, N.J.S.A. 2C:15-2, defines that term, and states:
a. Carjacking defined. A person is guilty of carjacking if in the course of committing an unlawful taking of a motor vehicle, R.S. 39:1-1, or in an attempt to commit an unlawful taking of a motor vehicle he:
(1) inflicts bodily injury or uses force upon an occupant or person in possession or control of a motor vehicle;
(2) threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury;
(3) commits or threatens immediately to commit any crime of the first or second degree; or
(4) operates or causes said vehicle to be operated with the person who was in possession or control or was an occupant of the motor vehicle at the time of the taking remaining in the vehicle.
An act shall be deemed to be "in the course of committing an unlawful taking of a motor vehicle" if it occurs during an attempt to commit the unlawful taking of a motor vehicle or during an attempt to commit the unlawful taking of a motor vehicle or during an immediate flight after the attempt or commission.
b. Grading. Carjacking is a crime of the first degree and upon conviction thereof a person may, notwithstanding the provisions of paragraph (1) of subsection a. of N.J.S. 2C:43-6, be sentenced to an ordinary term of imprisonment between 10 and 30 years. A person convicted of carjacking shall be sentenced to a term of imprisonment and that term of imprisonment shall include the imposition of a minimum term of at least five years during which the defendant shall be ineligible for parole.
When the carjacking statute is read in conjunction with the robbery statute, it is clear that N.J.S.A. 2C:15-2a(1) mirrors N.J.S.A. 2C:15-1a(1); N.J.S.A. 2C:15-2a(2) mirrors 2C:15-1a(2) and N.J.S.A. 2C:15-2a(3) mirrors 2C:15-1a(3). This evinces a clear legislative intent to elevate a second-degree robbery into a first-degree offense and provide for enhanced punishment if the object of the robbery was to unlawfully take a motor vehicle. In addition, the Legislature added subsection (4) to the carjacking statute to create a crime of robbery even though force is not used, if the defendant either operates the motor vehicle, or causes it to be operated, while the person who was in possession or control of the motor vehicle, or was an occupant of it at the time of the taking, remains in the vehicle. This is somewhat of a counterpart to theft from the person, but is limited to situations involving an occupied vehicle.
Simply put, a person is guilty of carjacking if in the course of committing an unlawful taking of a motor vehicle, or in an attempt to commit an unlawful taking of a motor vehicle, he commits acts which would constitute a second-degree robbery upon an occupant or person in possession or control of the motor vehicle, or operates or causes the vehicle to be operated with the person remaining in the vehicle who was in possession or control or an occupant of the motor vehicle at the time of the taking. Furthermore, the Legislature specifically provided that an act shall be deemed to be "in the course of committing an unlawful taking of a motor vehicle" if it occurs during an attempt to commit the unlawful taking of the motor vehicle or during an immediate flight after the attempt or commission.
Here, when we consider the evidence, as we must, in the light most favorable to the defendant, he either struggled with the victim to gain control of the motor vehicle, or *1231 entered the vehicle, while it was still running, and while the victim was in the vehicle, grabbed the steering wheel and reached for either the keys or the ignition. Although we recognize that the jury found that Garretson committed carjacking by the element of putting the occupant in fear, if the testimony of the witness was credited, defendant also had engaged in a struggle or altercation with the victim in an attempt to take the car. He would thus have been potentially guilty of carjacking under N.J.S.A. 2C:15-2a(1). On the other hand, if there was no force used by defendant, he would still be guilty of carjacking in that he either operated the vehicle, or attempted to take the motor vehicle while the victim was put in immediate fear or remained in the vehicle for a slight period of time under the conditions in either subsection (a)2 or a(4). Even if the victim jumped out of the car after the defendant entered, grabbed the steering wheel and reached for either the key or the gearshift, the victim remained in the vehicle for a period of time while the defendant either operated the vehicle, or attempted to take it before she exited the vehicle. Thus, under the proofs for either scenario there was no rational basis for the jury to acquit the defendant of carjacking and convict him of the requested lesser offenses.
The available legislative history demonstrates the obvious intent of the Legislature in the enactment of this statute to combat increased violent acts of aggression in the taking of occupied motor vehicles from their occupants. See Governor's Press Release for Assembly Bill 2047 and Senate Bill 1324, dated August 4, 1993.[2]
Our review of the statute and its history persuades us that the Legislature intended to make carjacking an all-encompassing offense whenever a vehicle was taken from its occupant or driven off with the occupant in it. Our understanding of the statute is furthered by reference to then Governor Florio's Press Release, which is instructive, because it reflects his view of the applicability of this statute whenever a perpetrator seizes or takes over a vehicle from the actual possession of its owner or occupant. In his Press Release when he signed the carjacking statute into law[3] the Governor was quoted as saying "Any thug who yanks open a car door and tries to grab the wheel will go to jail. Count on it, ..." Such releases by the Governor may appropriately be considered as part of the legislative history of the enactment. See, e.g., State v. Sutton, 132 N.J. 471, 483, 625 A.2d 1132 (1993); State v. Strong, 110 N.J. 583, 592, 542 A.2d 866 (1988). Our cases have thus recognized that communications from the Executive Branch offer a reliable aid in determining legislative intent. Oswin v. Shaw, 129 N.J. 290, 308, 609 A.2d 415 (1992); 2A Norman J. Singer, Sutherland Statutory Construction § 48.05 (5th ed.1992).
We find no error in the judge declining to charge robbery or theft as lesser included offenses as requested. Robbery and theft are not within the four corners of a carjacking indictment when the theft underlying the robbery was the undisputed wrongful *1232 taking of the victim's automobile directly from its occupant. Cf. State v. Brent, supra (137 N.J. at 122-123, 644 A.2d 583); State v. Smith, 136 N.J. 245, 253, 642 A.2d 978 (1994).[4] Because it was undisputed that a motor vehicle with an occupant was involved, and there was no other testimony presented from which a rational fact finder could conclude otherwise, a rational jury could not acquit defendant of carjacking and convict of robbery or theft. The trial judge instructed the jury that only one offense of carjacking was charged, but that it was being submitted to the jury under two alternate theories. The jury unanimously found guilt on the first theory, that of carjacking while putting the occupant in fear of injury.
The judge did charge the additional offense of unlawful taking of a motor vehicle (joyriding) as a potential lesser included offense which does not require the use of force. N.J.S.A. 2C:20-10b. Hence, the jury was given a rational choice between carjacking and acquittal.

II.
In instructing the jury in accordance with the Model Jury Charge, CRIMINAL, Carjacking, the judge told the jury that what has to be involved was a "purpose to temporarily deprive a person of their vehicle," when he said:
As I've said, the State must prove beyond a reasonable doubt that the defendant was in the course of committing an unlawful taking of a motor vehicle.
* * *
Unlawful taking of a motor vehicle is described as the unlawful taking or exercise of unlawful control over the motor vehicle of another with the purpose to temporarily deprive a person of their vehicle.
Garretson argues that the jury could have found that he intended to permanently deprive the owner of the motor vehicle, and hence, a charge of robbery or theft from the person was appropriate.
In our view, the judge erred in instructing the jury if he meant to limit to only a temporary period the intent or purpose to deprive a person of his or her vehicle. However, any error in that regard was harmless beyond a reasonable doubt. As we stated in State v. Zadoyan, 290 N.J.Super. 280, 287, 675 A.2d 698 (App.Div.1996), carjacking is the unlawful taking of a motor vehicle with the purpose to "either permanently depriv[e] the owner of the motor vehicle or temporarily withhold[] the motor vehicle from the owner." Preferably, the judge here should have either instructed the jury that carjacking could involve a taking with a purpose to deprive on a permanent or a temporary basis, or said nothing about the length of time.[5] *1233 To the extent that the criminal model jury charge purports to confine the taking to a temporary period we conclude that it is in error.
A direct taking of the vehicle from its occupant is sufficient for a conviction of carjacking, whether the intent is to take the vehicle on a temporary or permanent basis.

III.
Garretson also argues that the trial judge mistakenly exercised discretion in imposing an extended term sentence. Defendant had a record of numerous prior convictions and committed the carjacking offense in July 1995, while out on parole from a robbery. We are satisfied under the circumstances that there was no mistaken exercise of discretion and that an extended term was appropriate. State v. Ghertler, 114 N.J. 383, 555 A.2d 553 (1989); State v. Hodge, 95 N.J. 369, 471 A.2d 389 (1984).

IV.
Finally, Garretson argues that the $750 penalty and the two year license revocation must be vacated because he was not convicted under the theft chapter (Chapter 20) of the Penal Code for the unlawful taking of a motor vehicle. The State argues that the penalty and license suspension were not imposed for the carjacking, but on the reckless driving conviction, and hence, would be appropriate. The record indicates that the judge apparently signed a disposition on the back of a motor vehicle summons when he dismissed a charge of driving while the license was suspended. The sentencing transcript indicates that the judge appears to have misspoken when he imposed a fine of $750 and a two years license revocation "on the suspended driving privilege on the motor vehicle matter, theft of a motor vehicle...." It appears that the judge intended to sentence on the theft of the motor vehicle, but misspoke initially and referred to "suspended driving privileges." It is thus unclear whether the judge imposed the penalty and license suspension on the carjacking conviction, or perhaps on the reckless driving conviction. N.J.S.A. 2C:20-2.1.a provides that in addition to any other disposition authorized by law a person convicted under the provisions "of this chapter" (emphasis supplied) "of theft or unlawful taking of a motor vehicle" is subject to certain enhanced penalties. Because the carjacking provisions are in a different chapter, chapter 15 (N.J.S.A. 2C:15-2), those penalties do not apply to a carjacking conviction. Thus, unless the $750 fine and suspension were under the reckless driving conviction, it must be vacated. Because we cannot determine what the judge's intent was from the record, we remand to the trial court to resolve that aspect. If the fine and suspension were imposed on the carjacking conviction, those penalties must be vacated.
Affirmed, except we remand for reconsideration with respect to the $750 penalty and the license revocation in accordance herewith.
NOTES
[1] On what offense these penalties were actually imposed is not clear from the record because there is an inconsistency in the transcript of the sentencing proceedings and the judgment of conviction for the carjacking conviction. Furthermore, there is no judgment of conviction in the record for the reckless driving conviction, albeit we recognize that such convictions are generally endorsed by the trial judge on the back of the original summons.
[2] The press release issued by then Governor Florio stated in part:

Carjackers who "steal wheels" in New Jersey will face mandatory penalties under legislation signed today by Governor Jim Florio making the crime a first degree offense, punishable by up to 30 years in jail.
"This bill makes carjacking a first degree criminal offense in New Jersey. Any thug who yanks open a car door and tries to grab the wheel will go to jail. Count on it," said Governor Florio, who signed the bill at the South Orange Police Department. He was joined by Bob Sholar, the husband of Gail Sholar who was kidnapped and murdered last year, and Joan Flood, who was shot and nearly killed during a carjacking in South Orange last October.
"Carjacking isn't a game. It's a vicious, violent crime that threatens the fabric of daily life. When people are afraid to go shopping or visit friends in the evening or even stop at a red light, then the criminals are taking our most precious freedoms away. We're never going to let that happen in New Jersey." Governor Florio said.
Until now, carjacking could be punished as robbery, assault, kidnapping or under other crimes, depending on the circumstances. The new law makes carjacking a separate first degree crime punishable by between 10 and 30 years in jail. Convicted criminals would be ineligible for parole for at least five years. * * *
[3] See footnote 2 supra.
[4] Smith accepted the State's contention that the exercise of prosecutorial charging discretion included the authority to decline to prosecute the defendant for an offense the defendant admits having committed, if that admission is inconsistent or incongruent with the theory of the State's case. Here, defendant never admitted the taking, but never submitted any evidence that there was anything but a carjacking. He merely argued that what occurred was not intended to be a carjacking, but only something short of it, even though no evidence of any other purpose was available to the jury.
[5] The Assembly Judiciary Law and Public Safety Committee Statement to Assembly Bill No.2047 (1993), noted a change in reference from "theft" to "unlawful purpose" which made clear that the intent was to include temporary and permanent taking of a motor vehicle. The committee statement said, in part:

This bill would establish carjacking as a criminal offense. Under the bill, a person is guilty of carjacking if in stealing or attempting to steal a motor vehicle, the person harms or threatens to harm an occupant or operates the motor vehicle with an occupant remaining in the vehicle. The committee amendments change the reference from "theft" to "unlawful taking" of a motor vehicle to include all possible theft offenses. The committee amendments also make clarifying changes to refer not only to occupants of a motor vehicle but also to the person in possession or control of the motor vehicle. Under the bill, as amended, a person is guilty of carjacking if, in the course of committing an unlawful taking of a motor vehicle, or an attempt to do so, the person also does one of the following four acts:
(1) inflicts bodily injury or uses force upon an occupant or person in possession or control of a motor vehicle;
(2) threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediately bodily injury;
(3) commits or threatens immediately to commit any crime of the first or second degree; or
(4) operates or causes the vehicle to be operated with the person who was in possession or control or was an occupant of the motor vehicle at the time of the taking remaining in the vehicle.
[Emphasis added].