728 A.2d 293 (1999)
321 N.J. Super. 124
STATE of New Jersey, Plaintiff-Respondent,
v.
Warren D. JENKINS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued Telephonically March 31, 1999.
Calendared March 9, 1999.
Decided May 10, 1999.
Kevin G. Byrnes, Designated Counsel, for defendant-appellant (Ivelisse Torres, Public Defender, attorney; Mr. Byrnes, of counsel and on the brief).
Craig V. Zwillman, Deputy Attorney General, for plaintiff-respondent (Peter Verniero, Attorney General, attorney; Mr. Zwillman, of counsel and on the brief).
Before Judges LONG, KESTIN and WEFING.
The opinion of the court was delivered by WEFING, J.A.D.
Tried to a jury, defendant was convicted of first-degree carjacking (N.J.S.A. 2C:15-2), first-degree robbery (N.J.S.A. 2C:15-1), and second-degree possession of a weapon for an unlawful purpose (N.J.S.A. 2C:39-4a). He was acquitted of third-degree unlawful possession of a weapon (N.J.S.A. 2C:39-5b). The trial court merged the weapons conviction into the robbery conviction. It sentenced defendant to twenty-eight years in prison, with a fourteen-year period of parole *294 ineligibility for carjacking, and a concurrent twenty years in prison, with a ten-year period of parole ineligibility, for first-degree robbery. We reverse his conviction for carjacking but affirm his conviction for robbery.
On April 29, 1995, Francis Groves, then seventy-nine years old, drove from his home in East Hanover to Fairmount Cemetery, located on the border of Newark and East Orange, to visit the grave of a friend. He arrived at approximately 1:30 p.m. He parked his car, went to the gravesite, and waited for a friend to arrive. While Groves waited, a young black male armed with a handgun approached him from behind and commanded him to surrender his money. Groves complied, handing his wallet to the assailant. The assailant removed the money and returned the wallet to Groves. The assailant then demanded Groves's car keys; Groves again complied. The assailant told Groves he would find the car at the cemetery gate. He then drove off in Groves's 1992 Buick. Groves walked to the gate, but his car was not there. He reported the incident to the cemetery office, which summoned police. Police discovered the vehicle several days later stripped and abandoned in Newark.
Groves was initially too shaken by the incident to identify his attacker from photographs. Eventually, in July 1985, he tentatively identified defendant from a photo array. In August 1995, he identified defendant at a line-up. He repeated his identification at trial.
Defendant initially raised the following arguments on appeal:
POINT I
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE TRIAL COURT'S LEGAL INSTRUCTIONS TO THE JURY PRECLUDING THE JURY FROM CONSIDERING THE LESSER-INCLUDED OFFENSE UNLESS IT UNANIMOUSLY FOUND THE DEFENDANT NOT GUILTY OF THE GREATER OFFENSE OF CARJACKING. (Not Raised Below)
POINT II
THE DEFENDANT'S RIGHT TO [A] FAIR AND IMPARTIAL JURY DECISION BASED SOLELY ON THE EVIDENCE PRESENTED AT TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ART. I PARAGRAPHS 1 AND 10 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY A JUROR'S RELIANCE ON EXTRANEOUS, NON-EVIDENTIAL MATTERS DURING THE DELIBERATION PROCESS.
POINT III
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY STATE CONSTITUTION WAS VIOLATED WHEN THE TRIAL COURT ADMITTED OUT-OF-COURT IDENTIFICATION EVIDENCE WITHOUT PROPERLY INSTRUCTING THE JURY ON THE LAW OF OUT-OF-COURT IDENTIFICATIONS. (Not Raised Below)
POINT IV
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY PROSECUTORIAL MISCONDUCT ON SUMMATION
POINT V
THE DEFENDANT'S SENTENCE IS EXCESSIVE: THE TRIAL COURT ERRED BY IMPROPERLY BALANCING THE AGGRAVATING AND MITIGATING FACTORS
After our initial review of this matter, we requested supplemental briefs from the parties *295 on the question whether defendant's actions constituted carjacking. We are now satisfiedafter receipt of those briefs, oral argument on the issue, and further detailed reviewthat defendant's conviction for carjacking cannot be sustained on the record developed at trial. This opinion will first address defendant's original arguments (other than his first point, which is mooted by our reversal of his carjacking conviction) and then turn to the question of carjacking.
At the outset of the trial, the court prohibited the jury from taking notes. See R. 1:8-8(b). Shortly into their deliberations, the panel informed the court that one juror had notes with him. Upon inquiry, the juror said that, in anticipation of deliberations, he had summarized the testimony presented and had referred to that summary when a question arose concerning the date of a particular event. The trial court impounded the notes, explained to the jury that they should settle such issues among themselves by deliberation and discussion, and assured itself that no other jurors were tainted. The trial court properly exercised its sound discretion by denying defendant's request for a mistrial. State v. Harvey, 151 N.J. 117, 205, 699 A.2d 596 (1997).
Based upon the record presented, we see no error in the manner in which the trial court handled the critical issue of identification. The State presented corroborating evidence of defendant's participation in this event through the testimony of defendant's friend Michael Chavers. Chavers told the jury that defendant possessed a new Buick shortly after the incident; when Chavers asked defendant how he obtained the vehicle, defendant responded he acquired it at the cemetery. Further, defense counsel for strategic reasons requested that the trial court avoid extensively discussing identification in its charge.
We have carefully reviewed the prosecutor's summation in light of defendant's complaints. Even if one of the prosecutor's comments could be characterized as improper, the trial court addressed the matter in its remarks to the jury before they departed for the day. We are satisfied that no reversible error occurred.
At the beginning of this opinion, we outlined the factual complex that gave rise to defendant's indictment on these charges. Our outline was of necessity brief because the testimony presented on the issue was brief. The record contains no evidence of the physical layout of Fairmount Cemetery, no evidence of the location at which Groves parked his car in relation to the location of the grave he was visiting, no evidence of the proximity of the car to the site of the assault, and no evidence of the elapsed time that Groves was away from his car when the attack occurred.
N.J.S.A. 2C:15-2a defines carjacking in the following manner:
A person is guilty of carjacking if in the course of committing an unlawful taking of a motor vehicle ... he:
(1) inflicts bodily injury or uses force upon an occupant or person in possession or control of a motor vehicle;
(2) threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury;
(3) commits or threatens immediately to commit any crime of the first or second degree; or
(4) operates or causes said vehicle to be operated with the person who was in possession or control or was an occupant of the motor vehicle at the time of the taking remaining in the vehicle.
Defendant was indicted under subsection (2) of the statute. The State elected not to rely upon the accompanying charge of first-degree robbery to elevate defendant's actions to carjacking under subsection (3). Subsection (2) required the State to prove that Groves was "an occupant or person in control" of the vehicle. Here, the record does not contain sufficient evidence to support a reasoned inference to that effect.
This court has previously recognized that an individual need not be physically within the structure of an automobile to be considered an occupant of the vehicle for *296 purposes of the carjacking statute. State v. Williams, 289 N.J.Super. 611, 616-17, 674 A.2d 643 (App.Div.), certif. denied, 145 N.J. 375, 678 A.2d 716 (1996) (affirming defendant's conviction for carjacking on the basis of defendant's testimony that he pushed the victim from the side of the car where he had been standing, jumped into the driver's seat, and drove away.) We recognized there that "[t]he broad aim of the statute is to enhance the punishment applicable to persons who use force or intimidation" to obtain possession of a car. Id. at 616, 674 A.2d 643. In Williams, however, the defendant was charged under subsection (1) of the statute, which refers to "an occupant or person in possession or control" of the automobile. Id. at 614-15, 674 A.2d 643. Subsection (2) of the statute, under which Jenkins was charged, omits any mention of possession.
There are only two other reported decisions under this statute: State v. Garretson, 313 N.J.Super. 348, 712 A.2d 1226 (App.Div.), certif. denied, 156 N.J. 428, 719 A.2d 1026 (1998), and State v. Matarama, 306 N.J.Super. 6, 703 A.2d 278 (App.Div.1997), certif. denied, 153 N.J. 50, 707 A.2d 154 (1998). In Garretson, the defendant got into the driver's seat of a car left unlocked and running in a convenience-store parking lot. Garretson, supra, 313 N.J.Super. at 352, 712 A.2d 1226. The owner's seventy-nine year-old mother was in the front passenger seat. Ibid. As she tried to get out of the car, she fell and was injured. Id. at 352-53, 712 A.2d 1226. The defendant drove off but was apprehended shortly thereafter by police. Id. at 353, 712 A.2d 1226. He was charged under subsections (2) and (4) of the statute but was convicted under subsection (2) only. Id. at 351, 712 A.2d 1226.
In Matarama, the victim returned home in the early morning hours and parked her car across the street from her house. Matarama, supra, 306 N.J.Super. at 12, 703 A.2d 278. She locked the car, put the keys in her pocket, and crossed the street. Ibid. As she took out her house keys, two men approached her and demanded her car keys. Ibid. She resisted and was badly beaten. Ibid. The police arrived, and the perpetrators fled. Ibid. They were captured shortly thereafter. Id. at 13, 703 A.2d 278. The defendant in Matarama, just as in Williams, was charged under subsection (1) of the statute. Id. at 9, 703 A.2d 278.
In Williams, Garretson, and Matarama, the victim was either in close proximity to the automobile or within it. While in Matarama the victim was across the street from the car, she had just walked away from it when she was assaulted. Further, the vehicle was the expressed object of her attackers.
Here, however, we are utterly unableas the jury would have beento conclude that there was proximity of any sort between Groves and his vehicle. Depending upon a cemetery's particular physical configuration, visitors are often forced to park some distance from a gravesite. We are satisfied that under subsection (2) the State must present evidence on the issue of proximity to prove that the victim was either an "occupant or in control of" the vehicle.
The victim's proximity to the vehicle is relevant in several regards. First, it clearly bears upon the victim's capacity to control the vehicle, either in terms of his own ability to operate it or to bar entry by others. It is relevant as well to establish that defendant's actions exposed the victim to a particular risk of harm beyond mere loss of the vehicle.
In Garretson, we noted the legislative history of this statute, particularly the Governor's Press Release issued when Governor Florio signed the bill into law. Garretson, supra, 313 N.J.Super. at 357-58, 712 A.2d 1226. This history indicates the Legislature's concern over a heightened risk of danger inherent in carjacking. Ibid. Other states have responded similarly to the "brutal dangers" associated with carjacking. See, e.g., Price v. State, 111 Md.App. 487, 681 A.2d 1206, 1209 (1996). We are satisfied that subsection (2) of the statute requires proof that the "occupant or person in control" of the vehicle was placed within a heightened zone of danger with relationship to the subject vehicle. Such proof is necessary to sustain a carjacking conviction under that subsection and subject a defendant to the statute's enhanced penalties.
*297 The State relies upon two out-of-state cases to support its position that the record contained sufficient evidence to sustain defendant's conviction: Price, supra, and Bell v. Commonwealth, 21 Va.App. 693, 467 S.E.2d 289 (1996). Those matters, however, involved convictions under carjacking statutes that refer to the taking of a vehicle from a person in possession or control of the vehicle. Price, supra, 681 A.2d at 1208; Bell, supra, 467 S.E.2d at 291. Here, however, the subsection under which defendant was convicted refers only to an occupant or person in control, and not to a person in possession, of the vehicle.
We are further satisfied that the statutory reference within subsection (2) to "in control of" cannot be satisfied by proof of constructive possession of the car. A contrary conclusion would give the statute a far broader sweep than was intended. The Legislature has distinguished control of a motor vehicle from constructive possession of a motor vehicle. Subsections (1) and (4) of the statute include the concept of possession, while subsection (2) omits any mention of possession and refers only to an occupant or person in control.
The distinction is justified in terms of the risk addressed by the respective subsections. Subsection (1) deals with the use of force or the infliction of bodily injury to obtain a motor vehicle. It is only appropriate to include the concept of possession within that subsection for by doing so the Legislature included, for example, the person physically assaulted in a parking lot who, through possession of the keys, has constructive possession of the car. Subsection (2), however, omits any reference to actual bodily injury or force; it deals with the threat of such injury. Because this subsection addresses the possibility of ensuing injury, rather than actual injury, the Legislature could reasonably determine to restrict its scope to those occupying or controlling a motor vehicle.
While the canon inclusio unius est exclusio alterius cannot be used to subvert the Legislature's intent, Bunk v. Port Auth. of N.Y. & N.J., 144 N.J. 176, 190, 676 A.2d 118 (1996), "where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 308, 625 A.2d 468 (1993).
Because the record contains insufficient evidence that Francis Groves either occupied or controlled the vehicle at the time of the assault, defendant's conviction for carjacking cannot stand.
Reversed in part and affirmed in part.