**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4134-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUDSON PORTER,

    Defendant-Appellant.

_____

Submitted February 4, 2020 – Decided February 28, 2020

Before Judges Fisher, Accurso and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-05-1155.

Joseph E. Krakora, Public Defender, attorney for appellant (Al Glimis, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant Judson Porter was convicted of ten charges in an eleven-count Essex County indictment, including first-degree carjacking and first-degree robbery.[1] During the four-day trial, the State presented the testimony of seven law enforcement witnesses and the driver of the vehicle, M.S. (Mary).[2] The passenger of the vehicle, T.K. (Tom), did not testify. Defendant was sentenced to an aggregate twenty-two-year prison term, with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

On appeal, defendant raises the following arguments for our consideration:

POINT I

THE FAILURE TO GIVE THE CLAWANS[3] CHARGE REQUESTED BY DEFENDANT AND TO ALLOW DEFENDANT TO ARGUE TO THE JURY THAT THE STATE FAILED TO PRESENT AN IMPORTANT WITNESS WAS HARMFUL ERROR. (U.S. Const. [a]mend[s]. VI, XIV; N.J. Const. [a]rt. I, [¶¶] 1, 10).

---

[1] During the charge conference, the State dismissed one of the two counts charging aggravated assault against a law enforcement officer.

[2] We use initials to identify the victims and an uncharged suspect, and pseudonyms for ease of reference.

[3] State v. Clawans, 38 N.J. 162 (1962).

A-4134-17T4

POINT II

THE TRIAL COURT ERRED BY DENYING DEFENDANT'S REQUEST FOR A THIRD-PARTY GUILT JURY INSTRUCTION. (U.S. Const. [a]mends. V, VI, . . . XIV; N.J. Const. [a]rt. I, [¶¶] 1, 10).

POINT III

COUNTS TWO AND THREE, THE ROBBERY AND CARJACKING CONVICTIONS RELATING TO [MARY], ARE PART OF THE SAME OFFENSE AND MUST MERGE.

POINT IV

DEFENDANT SHOULD BE RESENTENCED BECAUSE THE SENTENCING COURT CONSIDERED HIS POST-CONVICTION ASSERTION OF INNOCENCE AT SENTENCING. (Not Raised Below)

We reject the contentions raised in points I, II and IV and affirm defendant's convictions and sentence. But, we remand to the trial court for entry of an amended judgment of conviction merging the robbery conviction pertaining to Mary with the carjacking conviction.

3

I.

A.

We first summarize the facts underpinning defendant's challenges to the jury instructions, recognizing we must examine the charge as a whole to determine its overall effect. State v. McKinney, 223 N.J. 475, 494 (2015).

Late on a winter's night in 2017, Mary parked her Nissan Murano in front of her friend's apartment building in Irvington. Another friend, Tom, was seated next to Mary. Moments later, defendant approached the driver's side, pointed a silver handgun at Mary's head through the closed window, and ordered her out of the car. Defendant searched Mary's pockets with one hand while holding the gun in the other. After finding nothing in Mary's pockets, defendant ordered Tom to approach. After searching Tom's pockets and recovering nothing, defendant jumped in Mary's car and drove away. Various personal items, including her purse, wallet, cellphone and a small amount of cash were contained in the vehicle.

After defendant left the scene, Tom immediately called the police. Mary described the suspect as "a tall, slim. dark skin, black male wearing a black and gray Northface jacket, ski mask underneath his chin with gloves on." At trial, Mary said the suspect's eyes and mouth were visible through the mask. Mary

4

"got a good look at him especially when he was going through [Tom]'s pockets." Police located Mary's Nissan later that evening. The vehicle was unoccupied and parked fewer than two miles away in Newark.

Retracing what police believed would have been the suspect's likely route from the carjacking scene to the vehicle's resting place in Newark, officers noticed "a tall, slim, dark[-]skinned male wearing a black and gray Northface [jacket] with a ski mask underneath his chin with black gloves on." Officers called defendant to their car, but he "began taking off." During the ensuing chase, defendant "reach[ed] into his waist and . . . dropped a silver and black handgun." After a brief struggle, police arrested defendant. A search incident to his arrest revealed Mary's keys and cellphone. Mary told the jury the ski mask and handgun seized by police looked similar to the ski mask and handgun used by the suspect.

Also that night, police stopped D.H. (Daniel), a few blocks from the carjacking scene because he matched the general description of the suspect. Daniel had dark skin, "was around six feet" tall, and wore "blue jeans and [a] black coat." After the stop and frisk failed to reveal any weapons, the officers recorded Daniel's personal information and "sent him on his way."

Before the parties formally rested their cases, the trial court conducted a charge conference. Relevant here, defendant unsuccessfully sought a Clawans adverse-inference charge, and a third-party guilt instruction. We consider each jury charge in turn.

B.

At the conclusion of the evidence, defendant requested a Clawans charge based upon the State's failure to call Tom as a witness. The State asserted that Tom was unavailable, having "never responded to a single subpoena." According to the prosecutor, Tom "was never even served in this case despite weeks upon weeks of effort." The State also argued Tom did not possess "superior knowledge," as required under the governing law, because Tom's description of defendant did "not vary all that much" from Mary's description. Further, as disclosed in discovery, Tom was unable to identify defendant in a photo array. Accordingly, the State claimed Tom "would not have provided anything that was not already part of the record."

In a cogent oral opinion, the court carefully applied the factors set forth by our Supreme Court in State v. Hill, 199 N.J. 545, 561 (2009), and denied defendant's request. In Hill, the Court explained a trial judge may provide an

adverse inference charge after considering and making findings based on the following circumstances:

> (1) that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give; (2) that the witness is available to that party both practically and physically; (3) that the testimony of the uncalled witness will elucidate relevant and critical facts in issue[;] and (4) that such testimony appears to be superior to that already utilized in respect to the fact to be proven.
>
> [199 N.J. at 561 (alteration in original) (quoting State v. Hickman, 204 N.J. Super. 409, 414 (App. Div. 1985)).]

With respect to the first Hill factor, the trial court found Tom was "a civilian witness" who was "not under the wide umbrella of the State." Citing the State's efforts to find and subpoena Tom, the court was persuaded that Tom was unavailable. Recognizing there were no identifications of defendant made in this case, the court concluded the third factor was unknown, and whether Tom possessed any "superior knowledge" about the matter under factor four was "speculation."

Defendant now argues the court's refusal to give a <u>Clawans</u> charge was reversible error.[4] For the first time on appeal, defendant claims the State failed to detail the "specific efforts it made to serve [Tom]." Defendant's argument is unavailing.

After reviewing the record in light of the applicable legal standards, we conclude the trial court's ruling was not an abuse of discretion. The court made careful findings on the record as required by <u>Hill</u>. 199 N.J. at 561. We note, defendant neither disputed the State's efforts before the trial court, nor sought additional details regarding the efforts police made to locate Tom. We therefore affirm the trial court's denial of defendant's request for a <u>Clawans</u> charge.

## C.

Defendant sought a third-party guilt charge simply because police stopped and frisked Daniel shortly after the carjacking. The trial court denied

---

[4] Defendant's point heading claims the court failed to permit defendant "to argue to the jury that the State failed to present an important witness . . . ." But defendant did not brief that issue. An issue not briefed is deemed waived. <u>See</u> <u>Gormley v. Wood-El</u>, 218 N.J. 72, 95 n.8 (2014); <u>see also</u> Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 5 on <u>R.</u> 2:6-2 (2020). We nonetheless observe defendant's argument is inaccurate. Indeed, quoting <u>Hill</u>, the trial court observed "it is one thing for counsel in summation to point to the absence of particular witnesses; it is quite another when the court puts the weight of its authority behind such a summation by telling the jury it may draw an adverse inference from their absence." The trial court did not prohibit defense counsel from arguing about Tom's absence at trial, yet counsel did not do so.

defendant's application, concluding "[t]he fact that a patrol officer stopped someone matching the description with nothing more does not mandate a third [-]party guilt charge." As the court observed, Daniel "had no contraband in his possession or anything indicative of involvement in any criminal activity let alone this incident."

On appeal, defendant does not contend he was deprived of the opportunity to offer evidence of third-party guilt. Cf. State v. Cotto, 182 N.J. 316, 333 (2006). Indeed, defense counsel argued in summation that Daniel matched the suspect's description. Citing no authority for his argument, defendant instead contends the trial court's refusal to give the third-party guilt charge was reversible error. We disagree.

A third-party guilt instruction essentially reinforces the more general instruction to the jurors, which was repeatedly delivered by the trial court here. The charge as a whole, McKinney, 223 N.J. at 494, underscored that the State always maintained the burden of proof for the substantive charges and "the identity of the person who committed the crime." The trial court also instructed the jury that the defense had no obligation to prove anything or present any evidence, including the identity of the person who committed the crime. We discern no error in the court's refusal to give a third-party guilt charge in this

case, where Daniel had no connection to the crime other than his presence in the general vicinity of the crime and similarity to the victim's vague description of the suspect. Police did not find a weapon or proceeds of the robbery on Daniel's person as they did with defendant. Having considered the charge as a whole, we discern no error in the court's refusal to give a third-party guilt instruction.

## II.

We next address defendant's claim that the court erred by failing to merge his convictions for carjacking and robbing Mary. Before the trial court, the State conceded merger, noting "the carjacking and the robbery were of the same course of conduct and the same event. [Mary] was robbed of some belongings during the course of the carjacking." Notably, the trial court merged defendant's conviction for possession of a weapon for an unlawful purpose with his conviction for robbing Mary, but the court did not address merger of that robbery with carjacking.

Before us, the State changes its tune, contending "the robbery and carjacking of [Mary] were two different courses of conduct." Accordingly, the State argues merger is inappropriate because defendant's commission of the robbery was not limited to the theft of Mary's motor vehicle, but also included the rifling of her pockets at gunpoint.

10

It is well-settled that "merger implicates a defendant's substantive constitutional rights." State v. Cole, 120 N.J. 321, 326 (1990). Merger seeks to avoid multiple punishment for the same offense. State v. Miller, 108 N.J. 112, 116 (1987). "[I]f an accused has committed only one offense, he cannot be punished as if for two." State v. Davis, 68 N.J. 69, 77 (1975). "Not only does merger have sentencing ramifications, it also has a measurable impact on the criminal stigma that attaches to a convicted defendant." State v. Rodriguez, 97 N.J. 263, 271 (1984); see also State v. Tate, 216 N.J. 300, 302-03 (2013).

N.J.S.A. 2C:1-8(a) sets forth the "legislative parameters for merger of offenses," State v. Diaz, 144 N.J. 628, 637-38 (1996), and provides in pertinent part:

> When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
>
> (1) One offense is included in the other, as defined in subsection d. of this section;
>
>    . . . .
>
> (3) Inconsistent findings of fact are required to establish the commission of the offenses; or
>
> (4) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

A-4134-17T4

. . . .

d. Conviction of included offense permitted. A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense. An offense is so included when:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged . . . .

[N.J.S.A. 2C:1-8.]

Notwithstanding those statutory requirements, our jurisprudence has long-recognized a "flexible approach" to merger. State v. Miller, 237 N.J. 15, 32 (2019) (quoting State v. Brown, 138 N.J. 481, 561 (1994)). Under that approach, courts must analyze the evidence

in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed.

[Miller, 237 N.J. at 33 (quoting Davis, 68 N.J. at 81).]

We are satisfied that application of the flexible approach here requires merger of defendant's robbery and carjacking convictions. Defendant's theft by threat of force of Mary's vehicle, and searching of her pockets outside the

12

vehicle took place during a single criminal episode at the same place and time. Both offenses were the product of the same criminal intent and the same threatened use of force. Based upon the trial evidence, we do not discern any "clear statutory differences illustrating legislative intent to fractionalize [defendant's] course of conduct." Tate, 216 N.J. at 312. Importantly, the carjacking statute does not contain an anti-merger provision. Cf. N.J.S.A. 2C:13-6(f) (prohibiting merger of a luring of child conviction "with a conviction of any other criminal offense"); N.J.S.A. 2C:35-7.1(c) (prohibiting merger of a distribution of controlled dangerous substances (CDS) within 500 feet of public property conviction with a conviction for distributing CDS or employing a juvenile in a drug distribution scheme).

Moreover, defendant was charged with carjacking under subsection (a)(2) of N.J.S.A. 2C:15-2 and robbery under subsection (a)(2) of N.J.S.A. 2C:15-1. The evidence showed defendant committed the theft of Mary's motor vehicle at gunpoint, under "fear of[] immediate bodily injury" and rifled through her pockets at gunpoint under the same "fear of[] immediate bodily injury." State v. Garretson, 313 N.J. Super. 348, 355 (App. Div. 1998) (recognizing the carjacking statute "mirrors" the robbery statute, "evinc[ing] a clear legislative intent to elevate a second-degree robbery into a first-degree offense and

A-4134-17T4

provid[ing] for enhanced punishment if the object of the robbery was to unlawfully take a motor vehicle"). We therefore conclude the court erred by failing to merge defendant's robbery and carjacking convictions.

### III.

Finally, defendant seeks resentencing based upon the trial court's remarks that he lacked remorse and "denied involvement in the incident." Although the court's remarks were made in partial support of aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (specific and general deterrence), and in partial rejection of mitigating factor nine N.J.S.A. 2C:44-1(b)(9) ("[t]he character and attitude of defendant indicate that he is unlikely to commit another offense"), defendant only seeks resentencing without consideration of his "assertions of innocence in aggravation." Defendant does not contend his twenty-two-year sentence was excessive.

We have previously warned against the use of a defendant's refusal to admit guilt to increase a sentence. See State v. Marks, 201 N.J. Super. 514, 540 (App. Div. 1985) (noting our "view that a defendant's refusal to acknowledge guilt following a conviction is generally not a germane factor in the sentencing decision"). We have, however, found a "[d]efendant's consistent denial of involvement and . . . lack of remorse" supported a finding of aggravating factor

14

nine, N.J.S.A. 2C:44-1(a)(9), and "indicate[d] that a prison sentence [wa]s necessary to deter [the] defendant from similar conduct in the future . . . ." State v. Rivers, 252 N.J. Super. 142, 153-54 (App. Div. 1991). And, in State v. Carey, our Supreme Court recognized a sentencing court may consider the defendant's failure to take responsibility in support of aggravating factor three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense"). 168 N.J. 413, 426-27 (2001) (upholding the court's finding of aggravating factor three where the defendant "expresse[d] remorse, but [did] not directly accept responsibility for the crash or admit that he ha[d] a problem of drinking and driving").

We discern no error in the trial court's consideration of defendant's "denial of wrongdoing" when applying aggravating factor nine (and rejecting mitigating factor nine). Those fleeting remarks were not the sole bases for the court's application of those factors. The court also considered defendant's criminal record, noting: "A prior state prison sentence, probation and ISP[5] have not served to deter the defendant." According to the court, defendant "committed a previous felony while on probation supervision. He committed the violent offense presently before the court while his ISP was still active, in fact, less than

---

[5] Intensive Supervision Program.

15                                                                    A-4134-17T4

three months after being released from state prison." Those considerations provided ample support for the trial court's finding that there was a "serious need to deter this defendant and others from violating the law . . . ." In a similar vein, the court properly considered defendant's prior record of recidivism in rejecting mitigating factor nine.

Affirmed in part; remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4134-17T4