889 A.2d 1087 (2006)
382 N.J. Super. 469
STATE of New Jersey, Plaintiff-Respondent,
v.
Jeffrey DRURY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 21, 2005.
Decided January 27, 2006.
*1090 Yvonne Smith Segars, Public Defender, attorney for appellant (Alison Perrone, Designated Counsel, on the brief).
Joseph L. Bocchini, Jr., Mercer County Prosecutor, attorney for respondent (Dorothy Hersh, Assistant Prosecutor, of counsel and on the brief).
Before Judges WECKER, FUENTES and GRAVES.
The opinion of the court was delivered by
WECKER, J.A.D.
On or about September 17, 2000, a Grand Jury indicted defendant Aquil Busch, a.k.a. Jeffrey Drury, on thirteen counts. The case was tried over nine days between May 13, 2003, and June 3, 2003.
The jury found defendant guilty of the following: Count 3, first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a; Count 4, third-degree terroristic threats, N.J.S.A. 2C:12-3; Counts 5, 6, 7, and 8, first-degree carjacking, N.J.S.A. 2C:15-2; Count 9, third-degree theft by unlawful taking, N.J.S.A. 2C:20-3a; Counts 10, 11, 12, and 13, first-degree kidnapping, N.J.S.A. 2C:13-1b.[1]
Defendant received twenty years on Count 3, first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a; five years on Count 4, third-degree terroristic threats, N.J.S.A. 2C:12-3, concurrent to Count 3; twenty-five years on Counts 5, 6, 7, and 8, first-degree carjacking, N.J.S.A. 2C:15-2, concurrent to each other and consecutive to Counts 3 and 4; and twenty-five years on Counts 10, 11, 12, and 13, first-degree kidnapping, N.J.S.A. 2C:13-1b, concurrent to each other and to Counts 5 through 8, and consecutive to Counts 3 and 4. Count 9, third-degree theft by unlawful taking, N.J.S.A. 2C:20-3a, was merged into Count 5.
The trial judge imposed an eighty-five percent parole ineligibility term (seventeen years) on Count 3, aggravated sexual assault, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2 ("NERA"), and a ten-year period of parole ineligibility on each of Counts 5 through 8 and 10 through 13. Defendant's aggregate sentence therefore was forty-five years, the first twenty-seven without parole eligibility.
On appeal, defendant presents these arguments:
POINT ONE
THE PROSECUTOR VIOLATED DEFENDANT'S RIGHT TO A FAIR TRIAL BY QUESTIONING DEFENDANT ON HIS POST-ARREST SILENCE. (Not Raised Below).
POINT TWO
A JUDGMENT OF ACQUITTAL MUST BE ENTERED ON COUNT THREE, AGGRAVATED SEXUAL ASSAULT, AS THE STATE FAILED TO PROVE THIS OFFENSE BEYOND A REASONABLE DOUBT. (Partially Raised Below).

*1091 POINT THREE
THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING THE INTRODUCTION OF THE DEFENDANT'S REMOTE CONVICTION.
POINT FOUR
IMPOSITION OF PRISION TERMS ABOVE THE PRESUMPTIVE WHICH INCLUDE PAROLE DISQUALIFIERS VIOLATES DEFENDANT'S CONSTITUTIONAL RIGHTS TO TRIAL BY JURY AND DUE PROCESS OF LAW. (Not Raised Below).
POINT FIVE
THE IMPOSITION OF CONSECUTIVE SENTENCES IS CONTRARY TO THE PRINCIPLES OF STATE V. YARBOUGH, 100 N.J. 627, 498 A.2d 1239 (1985), CERT. DENIED, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986).
POINT SIX
THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING A 45-YEAR TERM WITH 27 YEARS OF PAROLE INELIGIBILITY BECAUSE AN ANALYSIS OF THE AGGRAVATING FACTORS DOES NOT SUPPORT SUCH A SENTENCE.

I
On September 16, 2000, at about 11:45 p.m., Jane Jones and three of her high school friends, Alex Armour, Bob Brown and Mary Morgan,[2] drove to Trenton, New Jersey, in search of marijuana to purchase. Sometime after midnight, they noticed a man lying on the side of the street, and when they drove near him, they heard him say "weed" several times. Intending to make sure the man was not dead or in need of help, they slowed their automobile. When the driver, Brown, stopped the car, a man, later identified as defendant, approached, opened an unlocked rear door and entered the car uninvited. Defendant then provided verbal directions to a certain house and told the teenagers that if they took him to the house, he would get them marijuana.
Once at the house, defendant left the vehicle and told the teenagers he would be right back. When he returned, he said he needed to go to another location for the drugs. After instructing them to take him to a second location, defendant demanded that one of the females accompany him into the house, and Jones went with him. At trial, she testified that defendant locked her in a room inside the house and choked her to unconsciousness. When she awakened, he threatened her by saying he had a knife, and he raped her. None of the teenagers used their cell phones to call for help because they were afraid of defendant and afraid of being punished for attempting to purchase illegal drugs.
Approximately twenty minutes after entering the house, defendant and Jones returned to the automobile. Defendant opened the unlocked driver's door and told Brown to move. Jones, who was crying, entered the back seat, exhibiting a cut on her eye and marks on her neck. Morgan testified that Jones subsequently told her that defendant had raped her.
About forty-five minutes after taking control of the automobile, defendant stopped the car, took the keys and left. The teenagers then exited the automobile and ran away; Jones ran with untied shoes and unbuttoned pants. The teenagers eventually found help and contacted the police. A detective took Jones to the hospital, where she underwent a sexual assault exam. After the exam, a detective photographed the visible injuries on her face and neck.
*1092 The vehicle was later found abandoned. A crack pipe was found inside. Jones and Brown identified defendant from a photo line-up. His DNA profile matched the spermatozoa profile on Jones's underwear.
Defendant testified to a different version of events that occurred on the night of September 16, 2000. He testified that when he first encountered the teenagers, he got permission to enter the automobile after yelling to them that he had drugs for sale. Defendant testified that the teenagers purchased $10 worth of crack, and that he offered to give them extra if they drove him to West Trenton. Defendant also testified that while in the car, he had a conversation with Jones about an exchange of sex for money, that Jones agreed to engage in sexual intercourse for $50, and that he paid her $25 "upfront." Defendant testified that he demanded his money back when intercourse did not occur, and that when Jones tried to leave, he "grabbed her around the neck" and told her to give him back his money.
They returned to the car, and defendant suggested to Brown that he, defendant, should drive because it was late, and he knew how to get back to where he had been picked up. He repeatedly stopped to conduct drug sales from the car over a period of about forty-five minutes. Defendant testified that the teenagers were afraid because people were on the streets, jumping on cars; therefore, before making his last sale, he drove them to a secluded area and took the automobile keys so they would not leave him. When he returned to find the teenagers gone, he drove around looking for them. Then he parked the car and left the keys.
N.J.S.A. 2C:14-2a(3) raises second-degree sexual assault to first-degree "aggravated" sexual assault if the sexual assault occurred under specific conditions, including if it occurred "during the commission, or attempted commission, ... of robbery, kidnapping, homicide, aggravated assault on another, burglary, arson or criminal escape." Carjacking is not explicitly enumerated in that statute. Prior to trial, the State moved to re-indict defendant on Counts 2 and 3, each of which alleged aggravated sexual assault by "an act of penetration ... during the commission or attempted commission of carjacking," because "carjacking" was not one of the expressly listed offenses in N.J.S.A. 2C:14-2a(3). The State moved to take the case back to the grand jury in order to seek an amended indictment alleging "kidnapping," which is an enumerated offense in the statute, instead of "carjacking" as the underlying offense. The trial judge deemed the request unnecessary, and therefore denied the motion. The judge analogized to the offense of "murder," which also is not in the statute, whereas the broader offense of homicide is.
THE COURT:
It doesn't say anything about murder either, but I think we would all agree that murder would be one of the crimes that if committed during the course of a sexual assault, would cause it to be upgraded to aggravated sexual assault, right?
DEFENSE COUNSEL:
Yes, your Honor, I would agree with that.
The judge then stated that the crime of carjacking is an upgrade of the crime of robbery, which is an enumerated offense in the statute. The judge also reiterated his analogy to murder and manslaughter (which are not enumerated offenses in the statute) and homicide (which is an enumerated offense in the statute), contending that even though "murder" and "manslaughter" are not expressly listed in the statute, they are crimes that are raised to the "aggravated" status pursuant to the *1093 accepted contention that they fall under the generic "homicide."
Prior to rendering sentence, the judge noted that he had reviewed the pre-sentence report, and named defendant's prior convictions. The judge then found aggravating factors 1, 3, 6, and 9, N.J.S.A. 2C:44-1a(1), (3), (6), and (9), but no mitigating factors, N.J.S.A. 2C:44-1b, and sentenced defendant to an aggregate term of forty-five years with a twenty-seven-year minimum prior to eligibility for parole.
The judge expressly based aggravating factor 1, the nature of the offense, on his finding that defendant had generated fear in multiple victims for a substantial period of time. The judge appears to have based aggravating factors 3 (the risk that defendant would commit another crime), 6 (whether defendant's prior criminal record justifies a substantial sentence), and 9 (whether there is a need for deterrence) on defendant's prior criminal record,[3] stating that "it seems his crimes are more serious as they occur," that the defendant's "prior criminal record justifies the imposition of a substantial prison term," and that "there is a very real and very definite need for deterrence."
The judge ruled that defendant's sentences on the carjacking counts would run concurrent to each other but consecutive to the aggravated sexual assault sentence; and the sentences on each kidnapping count would run concurrent to those for carjacking but consecutive to the sentences for aggravated sexual assault and terroristic threats. The judge explained that he imposed consecutive sentences because carjacking and kidnapping:
"[a]re separate and distinct from the crime of aggravated assault ... and each of the carjacking and kidnapping counts are a separate and distinct crime and for three out of the four counts of each there are other victims ... and in light of all the circumstances before the court, there's a justification for a consecutive sentence for the carjacking and kidnapping that is consecutive to the aggravated sexual assault count of the indictment."
The judge also stated that he felt strongly about imposing a consecutive sentence for the kidnapping and carjacking counts, but did not do so because of the similarity between those crimes and because of the potential for reversal on appeal.

II
Defendant contends that he was entitled to dismissal of the charge of aggravated sexual assault.

A
Defendant first argues that because "carjacking" is not an expressly enumerated offense in N.J.S.A. 2C:14-2a(3), defendant's sexual assault offense should not have been elevated to first-degree aggravated sexual assault. Defendant adds that criminal statutes are to be strictly construed, citing State v. Sewell, 127 N.J. 133, 603 A.2d 21 (1992), as support for that proposition. Second, defendant contends that even if N.J.S.A. 2C:14-2a(3) is construed to apply to carjacking, defendant's conviction should be vacated because the sexual penetration in this case did not occur "during the commission or attempted commission of the carjacking"; the sexual act occurred before the carjacking began. In other words, defendant argues that the State did not prove the *1094 elements of an aggravated sexual assault beyond a reasonable doubt.
Whether the unenumerated "carjacking" falls within N.J.S.A. 2C:14-2a(3) is a question of law, and our review is de novo. See Manalapan Realty L.P. v. Tp. Committee, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
The Code of Criminal Justice states that a person is guilty of aggravated sexual assault if the act of sexual penetration is committed "during the commission, or attempted commission, ... of robbery, kidnapping, homicide, aggravated assault on another, burglary, arson or criminal escape...." N.J.S.A. 2C:14-2a(3). While carjacking is not one of the explicitly enumerated crimes in that section of the Code, robbery is.
Comparing the statutory elements of carjacking with the elements of robbery demonstrates the similarity between the two, and that carjacking is a form of robbery. The elements of robbery are set forth in N.J.S.A. 2C:15-1a:
A person is guilty of robbery if, in the course of committing a theft, he:
(1) Inflicts bodily injury or uses force upon another; or
(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
(3) Commits or threatens immediately to commit any crime of the first or second degree.
Both the robbery statute and the sexual assault statute were enacted and became effective in 1979, as part of Title 2C, the newly enacted Code of Criminal Justice. The carjacking statute was not enacted until 1993, fourteen years later.
The elements of carjacking are set forth in N.J.S.A. 2C:15-2a:
A person is guilty of carjacking if in the course of committing an unlawful taking of a motor vehicle, as defined in R.S. 39:1-1, or in an attempt to commit an unlawful taking of a motor vehicle he:
(1) inflicts bodily injury or uses force upon an occupant or person in possession or control of a motor vehicle;
(2) threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury;

(3) commits or threatens immediately to commit any crime of the first or second degree; or
(4) operates or causes said vehicle to be operated with the person who was in possession or control or was an occupant of the motor vehicle at the time of the taking remaining in the vehicle.
An act shall be deemed "in the course of committing an unlawful taking of a motor vehicle" if it occurs during an attempt to commit the unlawful taking of a motor
vehicle or during an immediate flight after the attempt or commission.
[Emphasis added].
We agree with the trial judge and with the State's argument that carjacking is a form of robbery which the Legislature chose to single out for enhanced punishment. In State v. Garretson, 313 N.J.Super. 348, 712 A.2d 1226 (App.Div.), certif. denied, 156 N.J. 428, 719 A.2d 1026 (1998), we explained that the carjacking statute created "[a] new kind of robbery that is punishable more severely than robbery under N.J.S.A. 2C:15-1, with the specified added element in the carjacking statute of the taking of a motor vehicle...." Garretson, 313 N.J.Super. at 355, 712 A.2d 1226.
When we compare the robbery and carjacking statutes, it is apparent that the required elements mirror each other, except that carjacking includes the more specific element that the property taken unlawfully *1095 is a motor vehicle. Id. at 356, 712 A.2d 1226.[4] It would be entirely illogical to conclude that the crime of carjacking, a more specific form of the crime of robbery, would not establish the required element of an aggravated sexual assault: one that is committed in the course of a robbery.

B
Defendant contends that even if carjacking is a form of robbery which could satisfy N.J.S.A. 2C:14-2a(3) and thus establish a first-degree aggravated sexual assault, the evidence at trial does not support the required finding that sexual penetration of the victim was committed "during the commission, or attempted commission" of the carjacking.[5] In his charge to the jury with respect to count three, the judge instructed: "An actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person during the commission or attempted commission of robbery." He also instructed that "the law defines carjacking as a form of robbery."
The record clearly supports the jury's finding on count 3 that defendant committed an act of penetration, but it does not support the finding that defendant was attempting or in the commission or in flight from commission of the carjacking during the time he was inside the house with the victim of the sexual assault. Irrespective of whether defendant had formed the intention of taking the vehicle before the sexual assault, he had not yet done so. Nor had he taken any "substantial step" toward doing so. See N.J.S.A. 2C:5-1a(3). The driver remained in control of the vehicle until after defendant and the victim of the sexual assault returned to the vehicle.
The question then is whether the record permits us to conclude that the jury found the elements of second-degree sexual assault under N.J.S.A. 2C:14-2c(1), that is, an act of penetration when defendant "use[d] physical force or coercion, but the victim [did] not sustain severe personal injury." There is no question that the evidence supports such a finding; we must be satisfied, however, that the jury actually made that finding, and we are. Second-degree sexual assault, as defined by N.J.S.A. 2C:14-2, requires proof of sexual penetration under one of several circumstances, including the actor's use of "physical force or coercion."[6] The jury found defendant guilty on Count 4, charging the separate crime of terroristic threats against Jones, that is, threatening "to commit any crime of violence with the purpose to terrorize...." See N.J.S.A. 2C:12-3. That finding meets the required element of N.J.S.A. 2C:14-2c(1). We therefore exercise our original jurisdiction to modify defendant's conviction on Count 3, which is reduced to second-degree sexual assault, and defendant shall be resentenced accordingly.

*1096 III
Defendant contends that the trial court improperly permitted the State to impeach defendant with his 1996 conviction for fourth-degree aggravated assault. Defendant reasons that the trial court did not "properly balance the lapse of time and the nature of the crime to determine whether its relevance with respect to credibility ... outweighed the prejudicial effect to the defendant," citing State v. Sands, 76 N.J. 127, 386 A.2d 378 (1978). Defendant argues that the 1996 conviction was remote in that it occurred more than "seven years" ago, was not "serious" under Sands, and does not involve a lack of veracity, dishonesty or fraud.
The standard of review requires us to defer to the trial court's ruling on the admissibility of evidence of other crimes, unless that ruling constitutes an abuse of discretion. State v. Erazo, 126 N.J. 112, 131, 594 A.2d 232 (1991); see, e.g., Benevenga v. Digregorio, 325 N.J.Super. 27, 32, 737 A.2d 696 (App.Div.1999), certif. denied, 163 N.J. 79, 747 A.2d 287 (2000). "If the probative value of the evidence is outweighed by the threat of prejudice, the evidence should be excluded ... The trial court, because of its intimate knowledge of the case, is in the best position to engage in this balancing process." State v. Ramseur, 106 N.J. 123, 266, 524 A.2d 188 (1987). We disregard trial court errors unless they are "clearly capable of producing an unjust result." R. 2:10-2; Gillman v. Bally Mfg. Corp., 286 N.J.Super. 523, 528, 670 A.2d 19 (App.Div.), certif. denied, 144 N.J. 174, 675 A.2d 1122 (1996) (the appellate court must not interfere unless the lower court "pursue[d] a manifestly unjust course").
The decision to admit evidence of a prior conviction rests "within the sound discretion of the trial judge." Sands, 76 N.J. at 144, 386 A.2d 378. This discretion is broad, and the key to exclusion is remoteness. Ibid. The trial judge should consider the passage of time and the nature of the prior convictions, but also may consider whether the defendant has an extensive prior criminal record and the crime for which he is being tried. Id. at 145, 386 A.2d 378. If the decision is made to admit evidence of a prior crime that is the same or similar to the crime charged, the trial judge must "sanitize" the admissible evidence and limit cross examination on the prior crime to the degree and the date of the offense, excluding "any evidence of the specific crime of which defendant was convicted." State v. Brunson, 132 N.J. 377, 390-91, 625 A.2d 1085 (1993).
The State asserts that it is common in New Jersey for courts to find that convictions that are fewer than ten years old are admissible when used for impeachment purposes. State v. Spivey, 179 N.J. 229, 243, 844 A.2d 512 (2004) (six years from the date of the prior conviction to the date of the trial did not exceed the permissible threshold); State v. Lagares, 247 N.J.Super. 392, 398, 589 A.2d 630 (App.Div.1991) aff'd in part, rev'd in part on other grounds, 127 N.J. 20, 601 A.2d 698 (1992). The State argues that defendant's 1996 conviction is not remote because it occurred just four years prior to charges lodged against him in 2000 for these crimes, and just seven years prior to defendant's trial. The State also argues that Sands does not limit prior convictions used for impeachment to those that involve a lack of veracity, dishonesty or fraud.
Here, the trial judge held a hearing as to the admissibility of defendant's 1996 conviction, and determined it was admissible for impeachment purposes pursuant to Sands. The judge found the conviction serious, not remote, opining that it was a "Graves Act offense for pointing a firearm," that an eighteen-month sentence had been imposed for the crime, and only *1097 four years had passed between the conviction and the charge for the current crime. The judge also restricted the use of that conviction under Brunson, because both the prior conviction and current charges involved assault. During cross-examination of defendant, the State properly restricted its use of the prior conviction to the degree and date of the crime. We reject defendant's argument on this issue.

IV
Defendant contends that the State improperly questioned him at trial on his post-arrest silence, in violation of his right to a fair trial. Defendant acknowledges that he did not raise this issue at the trial level, and we address the issue under the plain error standard, that is, to be disregarded unless "clearly capable of producing an unjust result." R. 2:10-2.
Unquestionably, the State may not question a testifying defendant about why he was silent during police questioning. Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98 (1976); State v. Deatore, 70 N.J. 100, 115, 358 A.2d 163 (1976) (holding that "a defendant is under no obligation to volunteer to the authorities at the first opportunity the exculpatory story he later tells at his trial and cannot be penalized directly or indirectly if he does not").
Our review of the trial transcript supports the State's contention that defendant was not questioned in violation of that rule, and defendant's argument is without merit. See R. 2:11-3(e)(2).

V
Defendant contends generally that his sentences "above the presumptive, including parole disqualifiers, violated [his] constitutional rights to trial by jury and due process of law."[7] Defendant's argument invokes Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and the New Jersey Supreme Court's 2005 decisions in State v. Natale, 184 N.J. 458, 878 A.2d 724 (2005), and State v. Abdullah, 184 N.J. 497, 878 A.2d 746 (2005). Under those cases, a defendant may not be sentenced to a term beyond the maximum that could be imposed based upon the jury's verdict alone, except for the "recidivism" exception. Abdullah, supra, 184 N.J. at 506, 878 A.2d 746. The Supreme Court has held that under the Code as enacted, presumptive terms constituted the maximum. Natale, supra, 184 N.J. at 484, 878 A.2d 724. In Natale, the Court excised the Code's presumptive terms in order to maintain the sentencing ranges otherwise prescribed. Thus a defendant whose appeal involves a sentence above the presumptive, based upon aggravating factors other than prior convictions, is entitled to a new sentencing proceeding.
The Supreme Court in Natale held that its decision is to apply retroactively to cases then on direct appeal. Natale, supra, 184 N.J. at 494, 878 A.2d 724. Defendant's appeal was filed on January 1, 2004, and his sentence on remand shall be governed by Natale.
But Natale does not apply to defendant's sentences for carjacking or kidnapping. The sentencing range for first-degree carjacking, ten to thirty years, is higher than the general range of ten to twenty years for most first-degree crimes, compare N.J.S.A. 2C:15-2b with N.J.S.A. *1098 2C:43-6(a)(1); the sentencing range for first-degree kidnapping, fifteen to thirty years, is also higher than the general range for a first-degree crime, N.J.S.A. 2C:13-1c. Under the Code, however, there is no presumptive term for kidnapping or carjacking. See State v. Bryant, 217 N.J.Super. 72, 84, 524 A.2d 1291 (App. Div.), certif. denied, 108 N.J. 202, 528 A.2d 24, cert. denied, 484 U.S. 978, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987) (no presumptive sentence for kidnapping); State v. Zadoyan, 290 N.J.Super. 280, 290, 675 A.2d 698 (App.Div.1996) (no presumptive sentence for carjacking). Defendant's sentences for those crimes do not themselves require resentencing under Natale. The only sentence defendant received that requires a remand under Natale is his five-year sentence on Count 4 for third-degree terroristic threats. That sentence exceeds the four-year presumptive term that was in effect at the time, and was based upon more than defendant's prior record. It therefore requires resentencing under Natale.
Defendant's twenty-year sentence for first-degree aggravated sexual assault is moot. As we said in Part II of this opinion, defendant must be resentenced in light of the reduction of his sexual assault conviction to a second-degree crime.
We briefly address defendant's remaining arguments respecting his sentence, as guidance for the court on remand. Defendant correctly notes that aggravating factor 1 may be found only upon a showing that the crime was committed in a matter that is heinous, cruel or depraved. N.J.S.A. 2C:44-1(a)(1); State v. Jarbath, 114 N.J. 394, 404, 555 A.2d 559 (1989). However, defendant is incorrect in contending that the trial judge here made no finding related to the seriousness of the offenses. In fact, while the sentencing judge did not expressly use the terms "heinous," "cruel," or "depraved," the judge demonstrated his finding that the crimes fit those descriptions:
I had the opportunity to preside over this trial and there's no question in my mind that what Mr. Drury did here was to subject the victims to a night of terror, a nightmare that they will never forget. He held them in the car for a substantial period of time in an area where they were not familiar in an area which has been described as a high crime area by the witnesses who testified. They didn't know what to do. They didn't know whether or not they would leave with their lives. This terror was especially apparent in the case of Ms. Axner [sic] who was the victim of Mr. Drury's sexual assault ... Mr. Drury took advantage of his situation. Took advantage to the peril of the people involved.
So long as defendant's new sentence on each crime is within the statutory range, we see no reason to disturb the judge's findings respecting aggravating factor 1.
Likewise, in finding aggravating factor 9, the judge prefaced his finding with a review of defendant's prior conviction history and stated that "[t]here is a very real and very definite need for deterrence."
Finally, defendant contends that the trial judge's decision to impose his carjacking and kidnapping sentences consecutive to his aggravated sexual assault conviction violates the sentencing principles articulated in State v. Yarbough, 100 N.J. 627, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986), because the offenses here were "interdependent."[8] We perceive *1099 no merit to defendant's contention. We do note that in Abdullah, the Court found Blakely inapplicable to imposition of consecutive sentences under the State's sentencing standards. Abdullah, supra, 184 N.J. at 512-13, 878 A.2d 746. The Court held that sentencing courts have the discretion to impose consecutive sentences when a defendant is convicted of multiple offenses, as long as the sentencing court articulates its reasoning with respect to the Yarbough factors. Id. at 513, 515, 878 A.2d 746 (citing Yarbough, 100 N.J. at 643, 498 A.2d 1239).
Defendant's convictions on Counts 4 through 8 and 10 through 13 are affirmed, defendant's conviction on Count 3 is modified and affirmed as modified, and the case is remanded for resentencing consistent with this opinion.
NOTES
[1] The Judgment of Conviction indicates that defendant was acquitted on Count 1 (second-degree aggravated assault, N.J.S.A. 2C:12-1b(1)), but the jury actually convicted him of a lesser-included, third-degree aggravated assault. N.J.S.A. 2C:12-1b(7). On remand the judge shall correct the judgment and sentence defendant on the lesser-included offense.
[2] We have used fictitious names for each of the victims.
[3] The judge noted that defendant had a 1996 conviction for aggravated assault, a 1998 conviction for conspiracy, "two disorderly persons convictions as an adult," and a juvenile delinquency history which included "an adjudication for robbery."
[4] In a press release announcing the signing of the carjacking statute, then New Jersey Governor James Florio was quoted: "[U]ntil now, carjacking could be punished as robbery, assault, kidnapping or under other crimes ... the new law makes carjacking a separate first degree crime punishable by between ten and thirty years in jail." Id. at 357, 712 A.2d 1226.
[5] N.J.S.A. 2C:15-2 provides, in pertinent part, that the sexual act

[s]hall be deemed "in the course of committing an unlawful taking of a motor vehicle" if it occurs during an attempt to commit the unlawful taking of a motor vehicle or during an immediate flight after the attempt or commission.
[6] Criminal coercion, defined by N.J.S.A. 2C:13-5a(1), is established by a threat to "inflict bodily injury ... or commit any other offense" when acting "with purpose unlawfully to restrict another's freedom of action to engage or refrain from engaging in conduct...."
[7] Defendant's brief refers only to "prison terms above the presumptive." It does not specify which sentences he addresses. Addressing this argument, the State focuses on the carjacking and kidnapping sentences, when the only sentences subject to presumptive terms at the time defendant was sentenced were those for aggravated sexual assault and terroristic threats.
[8] We have modified defendant's conviction on Count 3, as set forth above, to second-degree sexual assault.