919 A.2d 813

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JEFFREY DRURY, DEFENDANT–APPELLANT.

Argued November 29, 2006—Decided April 24, 2007.

198

*Alison S. Perrone,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Robert E. Bonpietro,* Deputy Attorney General, argued the cause for respondent (*Stuart Rabner,* Attorney General of New Jersey, attorney).

Justice HOENS delivered the opinion of the Court.

Defendant Jeffrey Drury was convicted of multiple offenses, all arising out of an incident that began when a group of teenagers approached him, seeking to buy marijuana, and that ended after defendant sexually assaulted one teenager and carjacked them and their vehicle. Our grant of certification was limited to two discrete issues, one relating to defendant's aggravated sexual assault conviction and the other concerning defendant's kidnapping sentence.

More specifically, the first issue before us is whether carjacking can support an aggravated sexual assault conviction. Sexual assault, *N.J.S.A.* 2C:14–2c, a second-degree offense, is elevated to aggravated sexual assault, *N.J.S.A.* 2C:14–2a, a first-degree crime, when the assault "is committed during the commission, or attempted commission" of certain enumerated offenses, including "robbery," *N.J.S.A.* 2C:14–2a(3). In this matter, we consider whether the jury's verdict finding defendant guilty of carjacking, *N.J.S.A.* 2C:15–2, constituted commission of a robbery sufficient to elevate the sexual assault he committed from a second-degree to a first-degree offense. We conclude that the Legislature did not intend to include triggering offenses other than those specifically enumerated in the statute defining aggravated sexual assault and that, therefore, defendant could only have been guilty of second-degree sexual assault.

The second issue before us relates to the sentence imposed on defendant for the crime of kidnapping, *N.J.S.A.* 2C:13–1b, and the application, if any, of the principles established in *State v. Natale,* 184 *N.J.* 458, 878 *A.*2d 724 (2005), *State v. Abdullah,* 184 *N.J.* 497, 878 *A.*2d 746 (2005), and *State v. Franklin,* 184 *N.J.* 516, 878 *A.*2d 757 (2005), to this crime. We conclude that because kidnapping is an offense to which a twenty-year presumptive term, *see N.J.S.A.*

2C:44–1f(1)(a), previously applied, defendant is entitled to a remand for reconsideration of the twenty-five year sentence imposed on him for kidnapping pursuant to *Natale*.

## I.

We derive our recitation of the facts from the extensive trial testimony of each of the participants, including defendant, about what transpired.

## A.

On September 16, 2000, Jane Jones,[1] Alexis Armour, Bob Brown, and Mary Morgan were at the home of a friend in Bordentown. All four were high-school students and each of them was sixteen or seventeen years old. Shortly before midnight, they decided to go to Trenton to buy marijuana. Bob drove the others in his father's car, a four-door sedan. Jane sat in the front passenger seat, with Mary seated behind her, while Alexis sat in the rear seat directly behind the driver. When they arrived in Trenton, they drove along a street where they believed they would be able to make their purchase. They saw a man, later identified as defendant, sitting or lying down and holding a brown bag. As the car began to drive by, they heard defendant say "weed, weed." Bob slowed the car to a stop. As he did, defendant approached, opened the back passenger side door where Mary was seated, and got into the car next to her without asking permission.

Defendant, who had a large, partially consumed bottle of beer in the bag, asked the teenagers how much marijuana they wanted to buy. When they told defendant that they wanted ten dollars worth, he offered to give them fifteen dollars worth instead if they

---

[1] The Appellate Division identified the four people, other than defendant, who were involved in the events that led to defendant's conviction by use of fictitious names, which designations we have elected to continue, with the exception of our election to alter the first name of one of the teenagers from Alex to Alexis to correctly convey the fact that she, like Jane and Mary, was female.

would give him a ride to where he wanted to go. The teenagers agreed, and defendant directed Bob to a house. According to Jane, defendant got out of the car and went into the house, but soon returned, telling the teenagers he could not make the purchase at that location and needed to be taken elsewhere. Defendant provided directions, and when they arrived at the second location, defendant said he wanted one of the girls to go with him into the building to make the purchase. He first asked Mary, the back-seat passenger, if she would go with him, but she declined, telling him she felt ill. Jane, the front-seat passenger, agreed to go instead.

Jane testified that she and defendant went into a nearby building and that defendant knocked on the door of an upstairs apartment. Two people answered the door and, after first leaving Jane alone in a bedroom, defendant went with them to a back room. When defendant returned, he told Jane that the others were getting the marijuana. He then locked the bedroom door and asked Jane about the nature of her relationship with Bob. She told him that she and Bob were involved romantically but that she was a virgin.

According to Jane, defendant then told her, in a "strong ... demanding" voice, that he was going to engage in sex with her. She refused and tried to unlock the door to leave, at which point defendant grabbed her from behind. Jane then began to scream and cry as defendant threatened to slit her throat with a knife and choked her into unconsciousness. When she revived, defendant was undressing. As she resisted his efforts to undress her, defendant again began to choke her and threatened to hit her. Jane continued to resist, but eventually defendant pried her legs apart and penetrated her vaginally.

After defendant completed his assault on Jane, he led her downstairs and out to the car where the other three teenagers were waiting. Instead of getting into the back seat, defendant opened the driver's door and told Bob to move over. Bob refused, saying that he was driving. Defendant ordered Bob to move over

and then shoved him out of the driver's seat and into the front passenger seat.

As a result, Jane, who had already opened the front passenger door to get back into that seat, instead took the rear passenger-side seat where defendant had been sitting earlier. Jane testified that she was crying when she got into the car and that she told the two other girls in the back seat what had happened. The other teenagers testified that Jane was crying, had bruises on her neck, and that there was a cut on her eyebrow that was bleeding. Mary, who was then sitting next to Jane, testified that Jane told her that defendant had threatened to slit her throat and had raped her. Alexis testified that Jane whispered to her that defendant had raped her. Alexis also noticed that Jane's "pants were undone and her shoes weren't tied."

Although at least three of the four teenagers had cell phones at some point during the night, defendant confiscated Bob's when it rang, and the teenagers were afraid to use theirs to call for help either during the twenty or thirty minutes when Jane and defendant were gone or after she returned. They testified that they did not call for help because they were afraid of defendant and afraid that they would be punished because they had been involved in an attempt to buy illegal drugs.

After defendant and Jane had returned to the vehicle, defendant drove the car, with the four teenagers in it, around Trenton for approximately forty-five minutes,[2] making one or two stops for the purpose of purchasing drugs for himself through the open window of the car and, according to Bob and Alexis, having Bob purchase "blunts" for him. According to the teenagers, only defendant ingested any drugs at any time during the night. When some of the teenagers asked defendant for permission to get out of the car,

---

[2] Jane estimated that defendant continued driving them around Trenton for "at least a half-hour, forty-five minutes." The estimates given by the other teenagers varied from a minimum of a half-hour to as much as two and one-half hours in duration.

he refused. In addition, although at one point during the drive defendant apologized to Jane for "what happened back there," he also ordered her to "shut up" because she would not stop crying.

Eventually, defendant drove back to the first house where they had stopped and got out of the car, taking the keys with him and saying he would return. The four teenagers waited until he had disappeared from sight and then got out and ran from the car to seek help. Jane had trouble keeping up with the others because her shoes were untied and her pants were still unbuttoned. Alexis was able to flag down a car driven by two gentlemen who drove the four teenagers to a guardhouse near a bridge, where the police were summoned. Photographs taken of Jane that night at the hospital showed marks and bruises on her neck, and a DNA analysis identified defendant's semen on Jane's panties.

Defendant offered a different version of the night's events. In relevant part, he testified that he called out to the slowly passing car to indicate that he had drugs for sale and then got into it after being given permission to do so. He directed Bob to keep driving so the transaction would not be discovered and sold or gave crack cocaine to Bob four times during the events that followed, starting with a ten dollar sale shortly after he got into the car. According to defendant, right after the initial sale, he asked the teenagers to take him to replenish his supply in exchange for free crack which they readily agreed to do. He testified that he began to converse with Jane soon after and that they stopped at a gas station where he bought cigars.

Defendant testified that when he went into the first house, his supplier did not have enough of the drugs he wanted to purchase and told him to return later that night. He explained that he then told Bob to drive around while he looked for other suppliers. Defendant stated that as they were driving, he and Jane continued to converse and that Jane willingly agreed to have sex with him in exchange for fifty dollars, of which twenty-five dollars would be paid in advance, with the balance to be paid when they had finished. He then directed Bob to the second house and showed

him a safe location where Bob and the others could wait while he and Jane had sex. Defendant also recalled that he gave Bob more crack to make him "comfortable" while he was waiting. After the car was parked, defendant asked "the girl in the back seat" if she wanted to join him, but she declined.

Defendant testified that he and Jane got out of the car, that he gave Jane twenty-five dollars as soon as they were out of sight of the others, and that they then went into the building where he paid ten dollars for use of a room. According to defendant, he became annoyed when Jane asked him if he had a condom and was unwilling to let him penetrate her, offering to perform oral sex instead. He claimed they did not have sexual intercourse. Because he was not satisfied with what transpired, defendant demanded that Jane return the money he had paid her. Defendant testified that he put his arm around her neck and choked her when she refused to give him his money back. He denied that she lost consciousness, but conceded that he choked her, commenting that he was then able to grab the money back from her.

According to defendant, he took over the driving after he and Jane returned to the car only because he knew how to get back to the house where his supplier was. He took the keys with him when he parked because he thought that otherwise the teenagers would drive away and leave him there, making it difficult for him to get back to the location where he had first met them. Defendant testified that when he returned and found that they were not waiting for him in the car, he drove around looking for them because he did not want the situation "to escalate . . . bigger than what it . . . really was." He eventually abandoned the car when he was unable to find them.

## B.

Prior to trial, the State sought leave to return to the grand jury in an effort to amend the indictment as it pertained to first-degree sexual assault. That count of the original indictment was based on the assertion that defendant had committed the act of penetration

"during the commission or attempted commission of carjacking." Recognizing that carjacking is not enumerated as an offense that raises sexual assault from a second-degree to a first-degree crime, *see N.J.S.A.* 2C:14–2a(3), the prosecutor sought an opportunity to reindict defendant for having committed the sexual offense during the commission of a kidnapping, which is listed as a permissible predicate offense.

The court denied the motion, reasoning on the record that an amendment would not be necessary. The court pointed out that robbery is one of the enumerated offenses that will suffice to elevate the sexual offense to a first-degree crime and concluded that carjacking was "an upgrade[d] [form] of robbery" which could therefore support the first-degree conviction. When charging the jury, the court utilized a portion of the Model Charge, *see Model Jury Charges (Criminal),* § 2C:14–2a(3) Aggravated Sexual Assault (June 19, 2001), for aggravated sexual assault and instructed the jury that carjacking constituted an appropriate predicate offense. The jury verdict sheet also used carjacking in place of one of the specifically enumerated offenses.

Following trial, the jury found defendant guilty of first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2a; third-degree aggravated assault, *N.J.S.A.* 2C:12–1b(7);[3] third-degree terroristic threats, *N.J.S.A.* 2C:12–3; four counts of first-degree carjacking, *N.J.S.A.* 2C:15–2; third-degree theft by unlawful taking, *N.J.S.A.* 2C:20–3a; and four counts of first-degree kidnapping, *N.J.S.A.* 2C:13–1b.

Defendant was sentenced to a term of twenty years for first-degree aggravated sexual assault, to which the No Early Release

---

[3] Although the relevant count in the indictment charged defendant with second-degree aggravated assault, *N.J.S.A.* 2C:12–1b(1), the jury acquitted him of that offense, finding him guilty of the lesser-included third-degree charge in its place. As the Appellate Division noted, the Judgment of Conviction incorrectly included only the acquittal and failed to note the finding of guilt on the lesser-included offense, a matter that must be corrected on remand. *See State v. Drury,* 382 *N.J.Super.* 469, 474 n. 1, 889 A.2d 1087 (App.Div.2006).

Act (NERA), *N.J.S.A.* 2C:43–7.2, applied, and to a concurrent term of five years for third-degree terroristic threats. In addition, he was sentenced on each of the four counts of first-degree carjacking to a term of twenty-five years, ten to be served without parole, all to be served concurrently with each other but consecutive to the first-degree aggravated assault term. Defendant was also sentenced on each of the four first-degree kidnapping counts to twenty-five year terms, ten to be served without parole, to be concurrent with the carjacking terms and consecutive to the aggravated sexual assault sentence. The third-degree theft by unlawful taking count merged for sentencing purposes. Defendant's aggregate sentence, therefore, was forty-five years, of which twenty-seven years are to be served before he will be eligible for parole.

## C.

On appeal, defendant challenged his conviction on the first-degree aggravated sexual assault count, arguing that carjacking is not an enumerated offense, or, in the alternative, that the sexual assault did not occur "during the commission of a carjacking." In addition, defendant [4] contended that his sentence was both excessive and unconstitutional. In a published opinion, the Appellate Division rejected defendant's argument that carjacking could not be used to elevate sexual assault to a first-degree offense, agreeing with the trial court's analysis that carjacking is a form of· robbery. *State v. Drury*, 382 *N.J.Super.* 469, 479–81, 889 *A.2d* 1087 (App.Div.2006). Nevertheless, the panel found merit in defendant's alternate argument, concluding that because the sexual assault was completed prior to the commencement of any of the acts that constituted carjacking, the sexual assault was not com-

---

[4] As part of his arguments to the Appellate Division, defendant also challenged his conviction generally, contending that the trial judge erred in permitting the prosecutor to impeach his credibility by referring to a prior conviction and to his post-arrest silence. As our grant of certification does not extend to these issues, we do not address them.

mitted " 'during the commission' " of the carjacking. *See id.* at 481–82, 889 *A.*2d 1087. The panel therefore concluded that the evidence could only support a conviction of second-degree sexual assault and modified defendant's conviction accordingly, remanding for resentencing on that count. *See id.* at 482–83, 889 *A.*2d 1087.

In addition, the appellate panel addressed defendant's several challenges to his sentence. *See id.* at 485–88, 889 *A.*2d 1087. In summary, the panel remanded for reconsideration of the five-year sentence for third-degree terroristic threats, pursuant to *Natale,* and for re-sentencing on the second-degree sexual assault count. *See id.* at 487, 889 *A.*2d 1087. The panel rejected defendant's *Natale* challenge to his sentences for carjacking and kidnapping, concluding that neither crime was formerly governed by a presumptive term, with the result that the *Natale* analysis was inapplicable to those aspects of defendant's sentence. *See id.* at 486–87, 889 *A.*2d 1087. Finally, the panel found no errors in the sentencing court's evaluation of aggravating and mitigating factors or in the imposition of terms for the kidnapping and carjacking convictions that were consecutive to the sentence for first-degree sexual assault. *See id.* at 487–88, 889 *A.*2d 1087 (citing *Abdullah, supra,* 184 *N.J.* at 512–13, 515, 878 *A.*2d 746; *State v. Yarbough,* 100 *N.J.* 627, 498 *A.*2d 1239 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986)).

## II.

We granted certification, 186 *N.J.* 603, 897 *A.*2d 1058 (2006), which initially was limited to one issue: "whether defendant's conviction for carjacking enabled the trial court to elevate defendant's second-degree sexual assault offense to first-degree aggravated sexual assault under *N.J.S.A.* 2C:14–2a(3)." We subsequently extended our grant of certification to include a second issue: "whether defendant's twenty-five year sentence (with a ten-year parole disqualifier) on his four convictions for kidnapping, *N.J.S.A.* 2C:13–1b, should be remanded for sentencing pursuant to

*State v. Natale,* 184 *N.J.* 458, 878 *A.2d* 724 (2005), in light of *N.J.S.A.* 2C:44–1f(1)(a) (presumptive term for kidnapping twenty years)." We turn, then, to our analysis of those issues.

## A.

■■■ Whether carjacking qualifies as a triggering offense within *N.J.S.A.* 2C:14–2a(3) so as to elevate the crime of second-degree sexual assault to first-degree aggravated sexual assault is a question of law. We therefore owe no deference to the interpretation of the trial court or the appellate panel, *see Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995), and apply instead a de novo standard of review. *See State v. Harris,* 181 *N.J.* 391, 419, 859 *A.*2d 364 (2004), *cert. denied,* 545 *U.S.* 1145, 125 *S.Ct.* 2973, 162 *L.Ed.*2d 898 (2005).

■■■ In doing so, we adhere to our ordinary principles of statutory interpretation. As always, when interpreting a statute's meaning, we attempt to discern and implement the Legislature's intent. *See State v. Reiner,* 180 *N.J.* 307, 311, 850 *A.*2d 1252 (2004). Basic techniques of statutory interpretation first require us to look at a statute's plain meaning, and, "[i]f the meaning of the text is clear and unambiguous on its face, [we] enforce that meaning." *Ibid.* If the language is ambiguous or "admits to more than one reasonable interpretation, we may look to sources outside the language to ascertain the Legislature's intent." *Ibid.* Such extrinsic sources, in general, may include the statute's purpose, to the extent that it is known, and the relevant legislative history. *See State v. Thomas,* 166 *N.J.* 560, 567, 767 *A.*2d 459 (2001). Where available, "[t]he official legislative history and legislative statements serve as valuable interpretive aid[s] in determining the Legislature's intent." *State v. McQuaid,* 147 *N.J.* 464, 480, 688 *A.*2d 584 (1997).

■■■ When interpreting a penal statute, such as the one we consider here, if plain meaning and extrinsic sources are inadequate, we then "employ the canon of statutory construction that

counsels courts to construe ambiguities in penal statutes in favor of defendant." *Reiner, supra,* 180 *N.J.* at 311, 850 *A.2d* 1252 (footnote omitted).

### B.

With these general principles in mind, we first consider whether the statute's words evince a plain meaning. Sexual assault is defined as "an act of sexual penetration with another person under [certain specified] ... circumstances." *N.J.S.A.* 2C:14–2c. Germane to this record, the specified circumstances include the commission of the act of penetration in which "[t]he actor uses physical force or coercion, but the victim does not sustain severe personal injury." *N.J.S.A.* 2C:14–2c(1).

Sexual assault is a crime of the second degree. *N.J.S.A.* 2C:14–2c. That offense may be elevated to aggravated sexual assault, a first-degree crime, under certain circumstances. *See N.J.S.A.* 2:14–2a. In particular, it becomes a first-degree crime if the sexual assault "is committed during the commission, or attempted commission, whether alone or with one or more other persons, of robbery, kidnapping, homicide, aggravated assault on another, burglary, arson or criminal escape." *N.J.S.A.* 2C:14–2a(3). The statute therefore elevates a second-degree sexual assault to a crime of the first degree if the perpetrator commits the assault during the commission or attempted commission of one of the enumerated offenses.

We begin our analysis of the issue before us, then, with the observation that because the statute does not include carjacking as one of the listed predicate offenses, the plain language does not support the conclusion that commission of a sexual assault during a carjacking is a first-degree crime. Nevertheless, the State urges us to conclude that carjacking is merely a form of robbery, and that therefore we should interpret the aggravated sexual assault statute to include carjacking as if it were among the specifically enumerated triggering offenses. This argument is based upon the observation that a comparison of the two offenses,

robbery, *N.J.S.A.* 2C:15–1a, and carjacking, *N.J.S.A.* 2C:15–2a, alone will demonstrate that they are related. Our analysis, however, leads us to conclude that the similarities are insufficient to support the State's argument that carjacking is simply a form of robbery. Although the first three subsections of these two statutes are nearly identical, there are several important distinctions between the two statutes. Among the differences we find to be significant is that carjacking is always a crime of the first degree, *see N.J.S.A.* 2C:15–2b, but robbery is ordinarily a crime of the second degree, *see N.J.S.A.* 2C:15–1b, absent certain defined circumstances. Carjacking, moreover, includes an additional subsection, *N.J.S.A.* 2C:15–2a(4), that defines the offense in a manner different from robbery. Nor is there any reference to robbery in the carjacking statute that might support the conclusion that carjacking is simply a form of robbery.

We cannot, therefore, conclude, based on a plain language analysis of the elements of robbery and carjacking, that the latter is merely a variety of the former. Without an analysis that proceeds beyond the plain language alone, we cannot conclude that the Legislature intended carjacking to be subsumed within the term robbery as it is used in the aggravated sexual assault statute in order to elevate sexual assault to a first-degree crime.

We turn, then, to the legislative history of the carjacking statute for guidance on the question of whether the Legislature intended that carjacking would qualify as a triggering offense under *N.J.S.A.* 2C:14–2a(3). Nothing in the legislative history directly answers the question whether the Legislature intended carjacking to be simply a form of robbery and, by extension, a triggering offense for aggravated sexual assault. The bill that would eventually create the carjacking offense, Assembly Bill No. A–2047, was accompanied by a statement that provides no clue suggesting a relationship between carjacking and the existing crime of robbery. *See* Assembly Judiciary Committee, *Statement to Assembly Bill No.2047*, at 1 (Nov. 23, 1992). However, the Senate Judiciary Committee Statement, reporting favorably on Assembly Bill No.

A–2047, referred to carjacking as a "new statutory offense." Senate Judiciary Committee, *Statement to Assembly Bill No.2047*, at 1 (June 14, 1993). The use of that phrase implies that the Legislature did not view carjacking and robbery as related offenses.

The only other significant aspect of the legislative history is found in a press release that was issued when the Governor signed the bill into law. *See* Office of the Governor, *News Release for Assembly Bill 2047 and Senate Bill 1324* at 1 (Aug. 4, 1993). We have previously commented that such "communications from the Executive Branch offer a reliable aid in determining legislative intent." *State v. Sutton*, 132 *N.J.* 471, 483, 625 *A.*2d 1132 (1993) (citing *Oswin v. Shaw*, 129 *N.J.* 290, 308, 609 *A.*2d 415 (1992)); *see State v. Strong*, 110 *N.J.* 583, 592, 542 *A.*2d 866 (1988); 2A Norman J. Singer, *Sutherland Statutory Construction* § 48.05 (5th ed.1992). We therefore may consider this press release as part of our analysis. According to the Appellate Division's analysis of the legislative history, the carjacking statute was enacted "to combat increased violent acts of aggression in the taking of occupied motor vehicles from their occupants." *See State v. Garretson*, 313 *N.J.Super.* 348, 357, 712 *A.*2d 1226 (App.Div.), *certif. denied*, 156 *N.J.* 428, 719 *A.*2d 1026 (1998). The Governor's press release also notes that the acts that constituted carjacking were, in general, criminal offenses even before the carjacking statute was enacted. *See* Office of the Governor, *News Release, supra*, at 1. He recognized that, prior to the enactment of the statute creating the first-degree offense of carjacking, the acts that comprise the offense:

> could be punished as robbery, assault, kidnapping or under other crimes, depending on the circumstances. The new law makes carjacking a separate first degree crime punishable by between 10 and 30 years in jail. Convicted criminals would be ineligible for parole for at least five years.
>
> [*Ibid.*]

Although these latter comments demonstrate that the Governor was aware of a relationship between the crimes of carjacking and robbery, the statement does not suggest that he, or the Legisla-

ture, considered carjacking to be simply a variety of robbery. On the contrary, the inclusion of references to the other related offenses in addition to robbery supports the conclusion that carjacking is, and was intended to be, a separate offense.

Alternatively, we have considered the suggestion, implicit in the Appellate Division's decision, that the Legislature's failure to enumerate carjacking as a trigger for aggravated sexual assault is the product of a mere legislative oversight. *See Drury, supra,* 382 *N.J.Super.* at 480, 889 *A.*2d 1087. This argument is based on the fact that although the aggravated sexual assault and robbery statutes were both enacted in the late 1970s as part of the new Code of Criminal Justice, *see L.* 1978, *c.* 95; *L.* 1979, *c.* 178, § 28, the statute that created the crime of carjacking was not enacted until 1993, some fourteen years after the Code became effective, *see L.* 1993, *c.* 221, § 1. Based on this time gap alone, it could be argued that the Legislature, when enacting the carjacking statute, simply overlooked including it as a triggering offense for purposes of first-degree sexual assault.

Our review of the legislative history suggests the contrary conclusion. The aggravated sexual assault statute has been amended three times since the carjacking statute was passed, *see L.* 1997, *c.* 194, § 1 (creating separate paragraph a(6)); *L.* 2001, *c.* 60, § 1 (amending c(3)(b) to alter type of supervisory capacity listed); *L.* 2004, *c.* 130, § 13 (replacing reference in c(3)(c) to foster parent with reference to resource family parent). None of those amendments added carjacking as an enumerated offense under *N.J.S.A.* 2C:14–2a(3). Therefore, we find no support for the suggestion that the Legislature intended carjacking to be a new form of robbery and simply overlooked the role that robbery plays as a triggering offense for aggravated sexual assault.

Moreover, since the time when the carjacking statute was enacted, the Legislature has amended several other previously-existing statutes to include references to carjacking. Significant to our analysis, the Legislature has several times amended statutes referring to robbery in order to add references to carjacking.

For example, the original version of the felony murder statute, *N.J.S.A.* 2C:11-3, enacted in 1978, included robbery as an enumerated triggering offense that would elevate the crime of criminal homicide to murder. *See L.* 1978, *c.* 95. That statute was amended by the Legislature in 1998 to include carjacking, along with robbery, as one of the enumerated triggering offenses. *See L.* 1998, *c.* 25, § 1. As another example, the statute governing the grounds for the waiver of juveniles out of family court on a prosecutor's motion, *N.J.S.A.* 2A:4A-26, also enacted before the carjacking statute, originally enumerated robbery as one of the triggering offenses for purposes of waiver. *See L.* 1982, *c.* 77, § 7. That statute was amended in 1999 to include carjacking as an additional triggering offense. *L.* 1999, *c.* 373, § 1. Finally, the statute authorizing the imposition of a discretionary extended term to certain defendants, *N.J.S.A.* 2C:44-3, enacted in 1978, *see L.* 1978, *c.* 95, has since been amended twice. It was amended in 1981 to designate robbery as a triggering offense, *see L.* 1981, *c.* 31, § 3, and again in 1999 to add carjacking as a triggering offense. *See L.* 1999, *c.* 160, § 4. Each of these examples suggests that the Legislature does not consider carjacking to be a form of robbery and that its failure to add the aggravated sexual assault statute to specifically include carjacking was not an oversight.

Further support for our conclusion can be found in several other statutes enacted after the creation of carjacking as a separate offense in 1993 in which the Legislature has specifically listed both robbery and carjacking as triggering offenses. For example, in 1994, in enacting bail restrictions under *N.J.S.A.* 2A:162-12, the Legislature was careful to include both robbery as well as the then-newly created crime of carjacking. *See L.* 1994, *c.* 144, § 1. In addition, when NERA, *N.J.S.A.* 2C:43-7.2, was enacted in 1997, it stated in broad terms that it applied to violent crimes. *See L.* 1997, *c.* 117, § 2. When the Legislature amended NERA in 2001 to enumerate specific offenses in place of the earlier references to "violent crimes," both robbery and carjacking were included. *See L.* 2001, *c.* 129. Similarly, in identifying offenses that would support a conviction for the newly created crime of terrorism

under *N.J.S.A.* 2C:38–2, the Legislature, in 2002, listed both robbery and carjacking. *See L.* 2002, *c.* 26, § 2. In the same year, the Legislature designated both robbery and carjacking as crimes that would disqualify current or prospective airline employees under *N.J.S.A.* 6:1–100f(5). *See L.* 2002, *c.* 73, § 2. Similarly, in listing the disqualifying convictions for airport employment in *N.J.S.A.* 32:2–37f, the Legislature enumerated both robbery and carjacking. *See L.* 2002, *c.* 73, § 1.

■ We find in this wide spectrum of relevant legislative pronouncements strong evidence that the Legislature regards carjacking as a crime separate and distinct from robbery. We conclude that when the Legislature intends to include carjacking as a relevant offense, it does so explicitly either by amending statutes that were enacted before the creation of the crime of carjacking or by referring specifically to both robbery and carjacking in statutes that were passed after the carjacking statute was enacted. We are therefore guided by the principle that "the Legislature ha[ving] carefully employed a term in one place and excluded it in another, it should not be implied where excluded." *GE Solid State, Inc. v. Dir., Div. of Taxation,* 132 *N.J.* 298, 308, 625 *A.*2d 468 (1993).

## C.

In addition to our analysis based on the plain meaning and legislative history of the relevant statutes, we note that our Appellate Division has also rejected the argument that carjacking is simply a form of robbery. The Appellate Division considered this issue when analyzing whether carjacking is a triggering offense for purposes of the Graves Act. *See State v. Livingston,* 340 *N.J.Super.* 133, 773 *A.*2d 1195 (App.Div.2001). The Graves Act permits imposition of an extended term sentence in connection with certain offenses which are committed with the use of a firearm and where the defendant previously has been convicted of a crime involving the use or possession of a firearm. *N.J.S.A.* 2C:43–6c. The Graves Act specifically includes robbery, but not

carjacking, among those offenses. *See ibid.* The trial court in *Livingston, supra,* imposed an extended Graves Act term on the defendant as a result of his carjacking conviction. *See* 340 *N.J.Super.* at 140, 773 *A.*2d 1195. On appeal, the Appellate Division vacated that aspect of the defendant's sentence and remanded for resentencing. *See ibid.* Although the State there conceded that carjacking was not an enumerated offense, the panel independently reasoned that "[b]ecause the Graves Act extended term sentencing provisions enumerate the crimes that trigger such sentences, and because carjacking is not so enumerated, we agree that [the defendant's] sentence for carjacking should have been imposed without a Graves Act extended term." *Ibid.* The panel commented that because defendant also had been convicted of robbery, the trial court was free on remand to impose "an appropriate extended term sentence on any conviction qualifying" under the Graves Act. *Ibid.*

The Appellate Division has also determined that robbery should not be considered to be a lesser-included offense of carjacking. *See Garretson, supra,* 313 *N.J.Super.* at 359, 712 *A.*2d 1226 (affirming trial court's refusal to charge robbery and theft as lesser-included offenses in trial on carjacking indictment); *State v. Matarama,* 306 *N.J.Super.* 6, 21, 703 *A.*2d 278 (App.Div.1997) (concluding that trial court did not err in failing sua sponte to give jury charge of "robbery, assault, and theft from ... person as lesser-included offenses" of carjacking), *certif. denied,* 153 *N.J.* 50, 707 *A.*2d 154 (1998).

Taken together, we find the statutory language, the history surrounding the enactment of the carjacking statute, and the several subsequent actions of the Legislature to amend other relevant statutes, while not amending the aggravated sexual assault statute, to provide a clear and unambiguous expression of the Legislature's intent. We therefore conclude that defendant's commission of sexual assault was not elevated to a first-degree offense by virtue of its relationship to the carjacking.[5]

---

[5] Although we concur in the ultimate conclusion of the appellate panel that defendant's conviction must be molded and that he must be resentenced to a

## III.

■ The second issue as to which we granted certification concerns a limited aspect of defendant's sentence. In relevant part, the trial court sentenced defendant to a term of twenty-five years of imprisonment, ten years of which were to be served without parole, on each of the kidnapping counts, each to be served concurrently with the others. In imposing this sentence, the judge found no mitigating factors and found the following aggravating factors: one, "[t]he nature and circumstances of the offense," *N.J.S.A.* 2C:44–1a(1); three, "[t]he risk that the defendant will commit another offense," *N.J.S.A.* 2C:44–1a(3); six, "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted," *N.J.S.A.* 2C:44–1a(6); and nine, "[t]he need for deterring the defendant and others from violating the law," *N.J.S.A.* 2C:44–1a(9).

As a part of its review, the appellate panel determined that certain aspects of defendant's sentence were governed by this Court's decision in *Natale, see Drury, supra,* 382 *N.J.Super.* at 485–87, 889 *A.*2d 1087, which applies retroactively to cases that were on direct appeal when *Natale* was decided in 2005, *see Natale, supra,* 184 *N.J.* at 494, 878 *A.*2d 724. Nonetheless, the appellate panel did not remand defendant's kidnapping sentences [6] for resentencing under *Natale. See Drury, supra,* 382 *N.J.Super.* at 486, 889 *A.*2d 1087. First noting that *Natale* addressed only sentences for crimes with presumptive terms, the panel concluded that the kidnapping sentence did not fall within the *Natale* doc-

term of imprisonment appropriate to a second-degree sexual assault conviction, we do so solely for the reasons expressed herein. We therefore do not reach the appellate panel's alternate analysis of whether the sexual assault was committed during the commission of the carjacking.

[6] Because of the panel's analysis of the aggravated sexual assault conviction, that aspect of defendant's sentence was reversed and remanded for sentencing as a second-degree sexual assault. *See Drury, supra,* 382 *N.J.Super.* at 483, 889 *A.*2d 1087.

trine because the crime of kidnapping had no presumptive sentence. *See id.* at 486–87, 889 *A.*2d 1087.

The panel cited *State v. Bryant,* 217 *N.J.Super.* 72, 84, 524 *A.*2d 1291 (App.Div.), *certif. denied,* 108 *N.J.* 202, 528 *A.*2d 24, *cert. denied,* 484 *U.S.* 978, 108 *S.Ct.* 490, 98 *L.Ed.*2d 488 (1987), in support of its observation that there was no presumptive sentence applicable to kidnapping. *See Drury, supra,* 382 *N.J.Super.* at 487, 889 *A.*2d 1087. However, the *Bryant* decision was based on an earlier version of the sentencing statute that did not include a presumptive term for kidnapping. *See Bryant, supra,* 217 *N.J.Super.* at 84, 524 *A.*2d 1291. That aspect of the Code was amended to add a presumptive term of twenty years for kidnapping, effective after the defendant's sentence was imposed in *Bryant, see* John M. Cannel, *New Jersey Criminal Code Annotated,* comment 1 on *N.J.S.A.* 2C:44–1 at 1021 (2006), and which therefore was not referred to in *Bryant.*

Notwithstanding the panel's reliance on *Bryant,* when defendant was sentenced the Code included a twenty-year presumptive term for the crime of kidnapping. *See N.J.S.A.* 2C:44–1f(1)(a). Because defendant's twenty-five year sentences for kidnapping exceeded the formerly-established presumptive term for that crime, that aspect of defendant's sentence must also be remanded for resentencing pursuant to this Court's decision in *Natale.*

## IV.

We therefore reverse the conclusion of the Appellate Division that defendant's commission of carjacking could support his conviction of first-degree aggravated sexual assault, but we affirm the judgment of the Appellate Division modifying his conviction on that count to a conviction of second-degree sexual assault. Furthermore, we reverse the judgment of the Appellate Division to the extent that it concluded that defendant's sentence for kidnapping was not entitled to a *Natale* remand. We remand this matter to the trial court for vacation of the sentence for first-degree aggravated sexual assault, imposition of a sentence for

second-degree sexual assault, correction of the judgment of conviction to reflect the finding of guilt of the lesser-included third-degree aggravated assault, and resentencing pursuant to *Natale* for kidnapping and third-degree terroristic threats. In all other respects, defendant's conviction is affirmed.

*For affirmance in part/reversal in part/remandment*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.